# Park *v.* Kansas City Southern Railway Company, Appellant.

*Principal and agent—General agent—Corporations—Evidence—Case for jury—Contract—Reduction of contract to writing.*

1. The act of an agent of a corporation within the general scope of the business with which he is intrusted binds the company, although the specific act may be in excess of his private instructions.

2. A general agent, unless he acts under a special and limited authority, impliedly has power to do whatever is usual and proper to effect such a purpose as is the subject of his employment.

3. Where the authority of an agent whether general or special is to be implied from the conduct of the principal, or where the medium of proof of agency is per testes, the jury are to judge of the credibility of the witnesses and of the implication to be made from their testimony; it is error for the court to decide the point as a matter of law.

4. Where a foreign corporation paints a sign on the door of its office with the name of the company followed by the name of an individual as "General Agent" and its letter-heads are printed in the same way, and it appears that the executive officers of the company visit the office several times a year, a jury will be justified in finding that the individual named on the sign and letter-head is the general agent of the company, and has authority to re-rent in the name of the company the office which he occupies as its agent.

5. Where the evidence tends to show that the general agent of a corporation entered into a verbal contract to re-rent an office for his company, and that thereafter the landlord sent to the agent a form of lease signed by himself with the request that it shall be signed by the agent's principal, and it appears that the written lease was in fact never signed by the principal, the question whether a definite agreement had been made for the re-renting of the office is a question to be passed upon by the jury.

6. Where all the terms of a contract are agreed upon, and its reduction to writing is provided for merely for facility of proof as to its terms, such provision for a contract in writing is not inconsistent with a present contract.

Argued April 29, 1914.   Appeal, No. 132, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., July T., 1912, No. 820, on verdict for plaintiff in case of David E. Park and the Farmers' Loan & Trust

Company, as Trustee under the last will and testament of William G. Park, deceased, v. Kansas City Southern Railway Company.  Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.  Affirmed.

Appeal from judgment of county court.

From the record it appeared that the case originated in the county court at July Term, 1912, No. 820.  In that court judgment was rendered in favor of the plaintiff for $552.  On petition an appeal was allowed to the common pleas, and the case was there tried resulting in a verdict for plaintiff for $638.27.

The facts are stated in the opinion of the Superior Court.

The case was tried before REID, J.

*Errors assigned* were (1) refusal of motion for nonsuit; (2) refusal of binding instructions for defendant, and (3) refusal of judgment for defendant n. o. v.

*Edward T. Noble,* of *Evans, Noble & Evans,* for appellant.—We maintain that there must be some positive evidence of the agency and its resultant authority, before the court could properly submit the question to the jury and that therefore the court erred in not granting defendant's motion for compulsory nonsuit: Laur Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396; Slease v. Waysmith, 14 Pa. Superior Ct. 134; Singer Mfg. Co. v. Christian, 112 Pa. 534; Swing v. Bates Machine Co., 32 Pa. Superior Ct. 403; Bellman v. Pittsburg, etc., R. R. Co., 31 Pa. Superior Ct. 389.

There was no sufficient evidence of a verbal contract to take the case to a jury: Smith v. Kaufman, 30 Pa. Superior Ct. 265; Heyer v. Piano Co., 6 Pa. Superior Ct. 504.

*S. A. McClung, Jr.,* with him *Thomas D. Chantler* and *William H. McClung,* for appellee.—Private restric-

tions placed upon the apparent authority of an agent, have no place in limiting the liability of the principal where a third party has dealt with the agent in good faith and within the scope of the agent's apparent authority: Adams Express Co. v. Schlessinger, 75 Pa. 246; New York C. & H. R. R. R. Co. v. Lumber Co., 49 Pa. Superior Ct. 453; Sober v. Moony, 48 Pa. Superior Ct. 92; Bellman v. Pittsburg, etc., Ry. Co., 31 Pa. Superior Ct. 389.

OPINION BY RICE, P. J., October 12, 1914:

The plaintiffs alleged in their statement of claim that the defendant, by Daniel S. Roberts, its general agent, on or about December 6, 1909, agreed to rerent for a year from April 1, 1910, room 706 in the Park building—an office building belonging to the plaintiffs. The defendant denied that Roberts had authority to make the alleged contract, and that it was made. The court submitted both issues of fact to the jury and subsequently entered judgment on the verdict in the plaintiffs' favor. The question raised by the second and third assignments of error, the first having been withdrawn, is whether the court would have been warranted in affirming the point that under the evidence the verdict must be for the defendant. In the determination of that question the plaintiffs must be given the benefit of every fact and inference of fact essential to recovery by them which could be found by the jury from the evidence before them and could rationally be drawn by them from the facts so found. It is perfectly proper, therefore, to state the case as favorably to the plaintiffs as any view the jury could rationally take of the evidence would warrant, without undertaking to give a résumé of the evidence adduced on both sides or to point out and attempt to reconcile its conflicts.

1. As indicated by its title the defendant is a foreign corporation and had its principal office in another state. For two years prior to April 1, 1910, it had been an

occupant under written leases of rooms (first of 725 and afterwards of 706) in the Park building, in which it maintained an office for the transaction of a branch of its business in the Pittsburg district, namely, soliciting freight for transportation over its own and connecting lines. For a time this office and the business therein transacted were in charge of a representative of the company who was designated as "commercial agent." He was succeeded by Daniel S. Roberts and by arrangement between him and the plaintiffs the office was transferred from room 725 to room 706. Under him the office force was enlarged, the letter heads were changed so as to read "The Kansas City Southern Railway Company—Daniel S. Roberts, General Agent," etc., and a similar sign was painted on one of the doors of the office. The executive officers of the company visited the office several times a year and thus had opportunity to learn how the business was being conducted by Roberts. These facts clearly warranted a finding that he was what he was held out to be, a general agent of the company, in charge of the particular branch of its business in the Pittsburg district, to which we have referred. "Corporations act through agents. The public is not informed as to the specific and private instructions which may be given to them, limiting their ostensible powers. A just protection to persons dealing with corporations imperatively requires that the act of the agent, within the general scope of the business with which he is intrusted, shall bind the company, although the specific act may be in excess of his private instructions:" Adams Express Co. v. Schlessinger, 75 Pa. 246. "The act of a general agent or one whom a man puts in his place to transact all his business of a particular kind or at a particular place will bind his principal so long as he keeps within the general scope of his authority, though he may act contrary to his private instructions:" 2 Kent's Commentaries, 620. "A general agent, unless he acts under a special and limited authority, impliedly

has power to do whatever is usual and proper to effect such a purpose as is the subject of his employment. Hence, in the absence of known limitations, third persons dealing with such a general agent have a right to presume that the scope and character of the business he is employed to transact is the extent of his authority:" 31 Cyclopedia of Law and Procedure, 1340. Having regard to the nature, scope and necessities of the business with which Roberts was intrusted, to the manner in which it had been conducted with the knowledge and acquiescence of the defendant, and to the act of a similar kind to that involved in this case which apparently was ratified and approved by the defendant, it is a rational inference that the rerenting upon the same terms of the room in which the business was conducted was a naturally and closely related incident of the business and as such was within the scope of Roberts' authority as general agent. This being a legally permissible inference under the evidence, which was partly oral and partly written, the general rule applies that where the authority, whether general or special, is to be implied from the conduct of the principal, or where the medium of proof of agency is per testes, the jury are to judge of the credibility of the witnesses, and of the implication to be made from their testimony; it is error for the court to decide the point as a matter of law: The Loudon Savings Fund Society v. The Hagerstown Savings Bank, 36 Pa. 498; Bellman v. Pittsburg and Allegheny Valley Railway Co., 31 Pa. Superior Ct. 389.

2. On December 6, 1909, the plaintiffs, through their agent, transmitted to Roberts a lease executed in duplicate by the plaintiffs and upon the same terms as the lease of the preceding year, and accompanied it by a letter addressed to Roberts as general agent, which reads as follows: "Confirming our verbal understanding, herewith please find lease in duplicate covering your present quarters in this Building for the year commencing April 1, 1910, duly executed on our part. Please

have these leases signed on the part of your Company, and then return one copy to me and greatly oblige." A month later, no reply having been made to this letter in the meantime and the lease not having been returned, the plaintiffs' agent again wrote to Roberts regarding the matter and received from him the following letter: "We are in receipt of your favor of even date, regarding lease this office, year commencing April 1, 1910, and would advise that we have this day forwarded same to our Kansas City officials, and as soon as it is returned will let you have it." It is apparent from this correspondence that the lease was executed by the plaintiffs and transmitted to the general agent of the defendant pursuant to a previous verbal understanding. What this verbal understanding or agreement was is not conclusively determined by the correspondence, and the oral testimony regarding it is in conflict. But according to the testimony of the plaintiffs' agent he called upon Mr. Roberts and asked him "whether or not the service rendered him was entirely satisfactory, whether or not he was satisfied with the room, and so on." "Upon his reply in the affirmative, I then asked whether or not it was his intention to stay, and whether or not we should make up a new lease. He said that we should and we did, but before we signed the lease he brought up the question of the filing case, and we agreed to build it and install it." He further testified in response to questions by the court that it was verbally agreed in this conversation that the terms of the lease should be identically the same as those of the lease then in force. In connection with this testimony should be considered the testimony of the plaintiffs' agent that Roberts said, in effect, "that in consideration of the new lease, he felt that we ought to build them a storage cabinet similar to those he had built for other railroad tenants, which was agreed to;" also the further testimony that after the lease had been forwarded the plaintiffs proceeded to have built and installed the

cabinet or cupboard to meet the special requirements of the defendant, and in accordance with details furnished by Roberts. This circumstance, while not conclusive, tends to sustain the plaintiffs' contention that a definite agreement had then been made for the rerenting of the room. As already indicated, it is not necessary for present purposes to refer to the contradictions of the testimony adduced by the plaintiffs. Where the question is as to the making of an oral contract, it is the province of the jury to pass on the credibility of the witnesses, to decide what was said and done at the interviews between the parties, and what was meant by what was said. There may be and undoubtedly are circumstances where it is the duty of the court to declare that the words used will not bear the meaning which is sought to be ascribed to them, but the general rule has been thus stated: "The sense of words used in connection with what the parties intended to express by them is exclusively for the jury to determine. The judge may not put a legal interpretation on oral words, and make it a matter of positive direction. It is the province of the court to expound the meaning of an instrument, but not of words uttered of which there can be no tenor: McFarland v. Newman, 9 Watts, 55; Brubaker v. Okeson, 36 Pa. 519. It is the province of the jury, who hear and observe the witness, to determine the meaning of what he says. Only when oral testimony fails to establish a disputed fact can the judge withhold it:" Maynes v. Atwater, 88 Pa. 496. Viewing the case in the light of this well-settled principle as to the province of the court and jury, we conclude that if the jury accepted the plaintiffs' version of what took place they were warranted in finding that an oral contract to renew, definite in all its terms, was then and there entered into. The fact that the parties contemplated that a written lease would be executed did not require that this question be withdrawn from the jury. They could well find that this was not intended to be a

condition precedent to the vitality of the contract, and the principle is well settled that where all the terms of a contract are agreed upon and its reduction to writing is provided for, merely for facility of proof as to its terms, such provision for a contract in writing is not inconsistent with a present contract: Smith v. Kaufman, 30 Pa. Superior Ct. 265.

It results from the foregoing that the court committed no error in refusing the defendant's point for binding direction and its subsequent motion for judgment non obstante veredicto.

The judgment is affirmed.