## Potts *versus* Aechternacht.

1. A usage which is to govern a question of right should be so certain, uniform and notorious, as probably to be known to and understood by the parties as entering into their contract.

2. Where a custom exists, it is to be presumed parties deal in view of it, and where no agreement is made as to commissions, that they agree to pay the customary rate. In the absence of such custom and of any agreement as to rate, the measure of compensation would be the value of the services rendered.

3. The testimony in support of a customary rate of commissions paid to brokers for the sale of collieries varied from five to twenty-five per cent. The court was asked to charge that there was no evidence of a fixed rate of commissions, and that a just compensation for services rendered was all that could be recovered, which was refused. *Held,* that this was error.

4. In a suit by a broker to recover commissions for the sale of a colliery, a broker whose business was the sale of real estate in Philadelphia, and who, by his own testimony had no experience, and knew of no sales or commissions paid on sales of collieries, is not competent as an expert in said suit.

February 5th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county* : Of January Term 1878, No. 212.

Assumpsit by Henry A. Aechternacht against George C. Potts to recover commissions for the sale of a colliery. The defendant pleaded the general issue. (The case originated in the old Supreme Court at Nisi 'Prius, and was transferred to Common Pleas, No. 3.)

The defendant owned a colliery in Schuylkill county, which was for sale. The plaintiff met him in the streets of Pottsville in October 1868, and Aechternacht alleged then employed him to sell the colliery. No arrangement was made as to compensation. Aechternacht was then employed in the coal commission business in New York, and was selling coal for R. B. Wigton. Plaintiff alleged that by the management of one Wadleigh, another broker, who acted at the suggestion of plaintiff, the property was sold to R. H. Powell and R. B. Wigton, for $65,000, which was afterwards reduced to $45,000. Powell paid Wadleigh $666.66 as commission. Plaintiff disclaimed of record " any claim for compensation effecting the sale other than the ordinary commissions for the sale of a colliery."

William L. Williams, called for the plaintiff, testified that he was a dealer in coal, and had been a coal operator. Was familiar with sales of collieries. " Commissions generally were from twelve to twenty-five per cent., sometimes ten per cent." On cross-examination he testified : " I never knew twenty-five per cent. commissions to be paid of my own knowledge, Have heard of sales at fifteen per cent. Sold one of my own through an agent

[Potts *v.* Aechternacht.]

and paid him sixteen per cent. commission. Am selling one now at a commission of ten per cent."

J. M. Wadleigh also testified for plaintiff: "Five per cent. was a low commission at that time. As business was transacted at that time ten per cent. was an ordinary commission. I am familiar with the sales of that kind of property in Schuylkill county."

Lewis H. Redner, called by defendant, testified: "Have been a real estate broker and conveyancer for over twenty years. Have conducted sales. I am familiar with customary commissions on large sales of real estate in 1868–9."

And being cross-examined by plaintiff, further testified: "I have had no experience in the sale of collieries, but have had in loaning moneys on collieries. Know of no sales or commissions paid on sales of collieries."

Defendant then offered to ask the witness the following question: "What was the customary commission upon the sales of real estate in the years 1868 and 1869, involving the sum of $65,000 or thereabouts?"

To which plaintiff objected, and the court sustained the objection and rejected the evidence.

Defendant then offered to ask the witness the following question: "What would be a suitable compensation for the sale of real estate involving the sum of $65,000 or thereabouts, in the years 1868 or 1869?"

To which plaintiff objected, and cross-examined the witness, who testified: "I had no experience in 1868 or 1869 in the sale of coal lands or collieries in Schuylkill county. I had charge of a colliery in Centre county in 1868." Objection sustained.

Among the points submitted by defendant was the following, with the answer of the court thereto:

6. As no definite rate of commission is alleged to have been promised, and there is no evidence of any fixed rate of commission for the sale of collieries, in no event can the plaintiff recover more than just compensation for the services rendered (if any) by him to the defendant.

Ans. "Refused, in view of Mr. Wadleigh's testimony that ten per cent. was the ordinary rate of commission in 1868."

Verdict for plaintiff for $2565.23; and after judgment thereon, defendant took this writ, and alleged that the court erred in rejecting the evidence of Mr. Redner, and in the answer to the sixth point.

*Charles Henry Jones* and *Wayne McVeagh*, for plaintiff in error.—The custom set up by plaintiff should be so well known and so long persisted in, that the law can presume it was in view of Mr. Potts, when, as is alleged, he employed Aechternacht to make this sale, otherwise plaintiff cannot avail himself of it:

[Potts *v.* Aechternacht.]

McMasters *v.* Pennsylvania Railroad Co., 19 P. F. Smith 374; 2 Pars. on Cont., *544. It can not be proved by single isolated instances : Cope *v.* Dodd, 1 Harris 37. It must not be fluctuating : Lawrence *v.* McGregor, Wright's Ch. (Ohio) 193. " A legal usage is a thing which it is not easy to establish :" Justice Baldwin, in Wilcocks *v.* Phillips' Executors, 1 Wall., Jr. 65.

At any rate the testimony in this case was not sufficient to establish a customary commission good in the law. It lacked the two essential elements of certainty and uniformity. In no two instances were the rates named the same. Five, ten, twelve, fifteen, sixteen and twenty-five per cent. were all mentioned by these two witnesses. It lacked also the essential element of reasonableness, as any one of these sums was too large on such large amounts for the services rendered.

It was error to reject the testimony of Mr. Redner. He testified that he had been a real estate broker for twenty years. Had conducted sales and was familiar with customary commissions on large sales of real estate in 1868 and 1869. Had loaned money on collieries, and had had charge of a colliery in Centre county in 1868. The contract of sale in this case was made in Philadelphia. Both purchasers resided there, and it was stipulated that the payments should be made in Philadelphia. If there was any custom as to the rate of compensation of the broker who effected the sale, it was the custom prevailing here which should have governed, and Mr. Redner established his competency to prove it.

*S. S. Hollingsworth* and *F. W. Hughes*, for defendant in error. —A usage does not require the same character of evidence to support it as a technical custom. The distinction is clearly stated in Juggomohan Ghose *v.* Mauchchund, 7 Moore's Indian Appeals. It is there said, " to support a mercantile usage there needs not the antiquity, the uniformity, or the notoriety of custom, which, in respect of all these, becomes a local law. The usage may be still in course of growth. It may require evidence for its support in each case, but in the result it is enough if it appear to be so well known and acquiesced in that it may reasonably be presumed to have been an incident tacitly imported by the parties into the contract."

The same distinction is made by Lord Ellenborough, in Legh *v.* Hewitt, 4 East 155–9, and by Mr. Justice MERCUR, in Carter *v.* Coal Company, 27 P. F. Smith 290–1.

In Shephard *v.* Payne, 104 Eng. Com. Law Rep. 414, it was distinctly held that a variation from time to time in the amount of fees received by the register of the Archdeaconry Court did not affect the validity of an immemorial custom to receive fees.

Apply this reasoning to the present case. Mr. Wadleigh says the ordinary commission was ten per cent. Mr. Williams says it

[Potts v. Aechternacht.]

varied from twelve to twenty-five per cent. Sometimes it was ten per cent. This is quite enough to show that it was never less than ten per cent. And that is just double what the plaintiff could possibly recover under his bill of particulars.

The plaintiff claimed " the ordinary commission " on the sale of a colliery. Mr. Redner knew of " no sales or commissions paid on sales of collieries." How, then, was he competent to testify on that subject? He was called as an expert, and he said he knew nothing of the only subject-matter about which his testimony could be material. It was utterly unimportant what was the customary commission upon " sales of real estate."

Mr. Justice PAXSON delivered the opinion of the court, March 1st 1880.

This was a suit to recover commissions upon the sale of a colliery in Schuylkill county. Upon the trial in the court below, the plaintiff disclaimed any claim for compensation in effecting the sale other than the ordinary commissions for the sale of a colliery, and so interpreted his bill of particulars.

If the plaintiff is entitled to recover anything under the evidence, which is by no means clear, it is manifest he is not entitled to the ordinary, that is, the customary rate of commissions, for the reason that there was no evidence of the existence of a fixed customary rate in Schuylkill county. The defendant's sixth point raised this question, but the court below refused to affirm it for the reason that one witness (Mr. Wadleigh) had testified that ten per cent. was an ordinary rate of commission in 1868. What the witness did say, was this: " Five per cent. was a low commission at that time. As business was transacted at that time, ten per cent. was an ordinary commission. I am familiar with the sale of property of that kind in Schuylkill county." The witness appears to have been engaged in mining, and for anything that the evidence discloses, never bought or sold a colliery on his own account or as a broker, save in this single instance. The only other witness called by the plaintiff upon this point was William L. Williams, a dealer in coal and formerly " a coal operator," who said that commissions generally vary from twelve to twenty-five per cent. All this falls very far short of establishing a customary rate for the sale of collieries. The plaintiff having disclaimed of record any claim for compensation " other than the ordinary commissions " elected to recover under and by force of a custom by which the rate of commission on sales of collieries in that county was fixed at a certain sum. It is almost needless to say that to establish such a custom, it must be reasonable, certain, uniform, continued, and moreover, generally understood and acquiesced in by persons engaged in buying and selling collieries. Where a custom exists, parties are presumed to deal in view of it, and where no agree-

[Potts *v.* Aechternacht.]

ment is made as to commissions, that they agree to pay the customary rate. In the absence of such custom, and of any agreement as to rate, the measure of compensation would be the value of the services rendered. This is always a safe standard and should never be set aside for a custom unless the latter is proved to be so well known and so long persisted in that the parties must be presumed to have known of it. A usage which is to govern a question of right, should be so certain, uniform and notorious as probably to be known to and understood by the parties as entering into their contract: United States *v.* Duval, Gilp. 356. And it cannot be proved by isolated instances: Dean *v.* Swoop, 2 Binn. 72; Cope *v.* Dodd, 1 Harris 33.

Here the testimony in support of a customary rate lacked the essential elements of certainty and uniformity. Five, ten, twelve, fifteen, sixteen and twenty-five per cent. were all mentioned by the witnesses. And it is at least a question whether the rate relied upon—ten per cent.—is not open to the further objection of being unreasonable. Upon this point, however, we are not called upon to express an opinion.

It follows from what has been said, that the defendant's sixth point should have been affirmed. The answer to the defendant's fourth point (first assignment), was immaterial, as the plaintiff did not seek to recover on the promise to pay the $1000. Nor was there error in the exclusion of Mr. Redner's testimony. He admitted that he had " no experience in 1868 or 1869 in the sale of coal lands or collieries in Schuylkill county." He was not, therefore, an expert.

Judgment reversed, and a *venire facias de novo* awarded.