## Marshall, Appellant, v. Reed.

*Principal and agent—Two employments—Compensation.*

Where one acts in a dual capacity as agent, or servant for two separate employers, nothing less than clear proof of consent of both employers, not merely to double service, but to the double compensation, will suffice to validate an express contract with the second employer.

Argued April 11, 1906. Appeal, No. 95, April T., 1906, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., May T., 1904, No. 653, on verdict for defendant in case of James Marshall v. James H. Reed. Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ. Affirmed.

Assumpsit to recover commission for the sale of real estate. Before KENNEDY, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in giving binding instructions for defendant.

*William M. Hall*, for appellant, cited: Early v. Rolfe, 95 Pa. 58.

*David A. Reed*, with him *Reed, Smith, Shaw & Beal*, for appellee, cited: Everhart v. Searle, 71 Pa. 256 ; Penna. R. R. Co. v. Flanigan, 112 Pa. 558 ; Rice v. Davis, 136 Pa. 439 ; Linderman v. McKenna, 20 Pa. Superior Ct. 409.

OPINION BY RICE, P. J., November 12, 1906 :

It appears from those averments of the plaintiff's statement of claim which were not denied by the affidavit of defense, that

the defendant was trustee of the separate estate of Emma L. Marshall, wife of George V. Marshall, and as such entered into an agreement in writing giving the plaintiff (who was a real estate agent) the option to purchase certain real estate therein described for $35,000; that contemporaneously with the execution of said paper, and as part of the same transaction and contract, Emma L. Marshall, who was acting for the defendant in making the promise, and had the defendant's express authority therefor, gave the plaintiff a promise in writing that if the option resulted in a sale of the property he should be paid a commission of three per cent on the price accepted by the defendant; that the option was subsequently amended by reducing the price to $34,000, changing the time of payment and adding other real estate at a price of $900; that still later the plaintiff exercised the option, and pursuant thereto the defendant conveyed the land to the Oakmont Land Company, and received as the purchase price $34,900. It further appeared upon the trial of the case that in the transaction or contract above referred to, of which the option and promise to pay commissions formed a part, it was contemplated that the plaintiff should act for the defendant in obtaining a purchaser of the property, and that the option was given with that end in view. This action was brought to recover a commission of three per cent on said sum of $34,900. The defense was, that at the time of the sale, as well as at the respective dates when the option was given and amended, the plaintiff was acting as the agent of the Oakmont Land Company, without the knowledge of the defendant, under an agreement whereby he was to receive a commission for procuring for that company the real estate in question. The court gave binding instructions for the defendant, and in an opinion filed refusing a new trial the learned judge said: " To permit a recovery in this case would violate the well-known principle that an agent for the purchase of property cannot at the same time act as agent for the seller, and thus entitle himself to compensation from both vendor and vendee, a principle founded on the declaration that 'No man can serve two masters.'" The appellant's counsel does not question this statement of the general principle, but contends that it is not applicable to the facts of the case. This suggests a review of the evidence.

One of the promoters and organizers of the Oakmont Land Company, who acted for the company in the purchase of the property, testified that prior to the date of the paper above referred to, he employed the plaintiff as the agent of those for whom the witness was acting to search for property suitable for the purpose they had in view, and 'to negotiate for its purchase; that he told the plaintiff what they wanted and "asked him to look over that whole country there," "and stated to him distinctly that he was to represent us in the matter, and that we would pay the commission"; that he acted as their agent throughout, and all the negotiations were had through him; and that after the purchase was consummated he demanded a commission, which after some discussion was fixed by agreement at two per cent. This testimony, so far as it relates to the employment of the plaintiff as agent for the Oakmont Land Company, and as to his acting as such, is supported by the testimony of the attorney who represented the company in the transaction, and does not conflict materially with the testimony of the plaintiff. While he denied that the subject of commission or compensation to be received from the Oakmont Land Company was mentioned prior to the purchase, he did not deny that he was employed to secure land for the purposes of the company, as alleged by the other witnesses; on the contrary, he testified as to the services he rendered for the company in that behalf, and stated distinctly that in obtaining the option above referred to he was not acting for himself. He said, "I would convey from his side to the other side what he was willing to take, or wanted to get, and when the other side thought that was too much I would go back, and see whether I could bring them together again. I finally succeeded in getting them together. One side wanted to get all it could, and the other side wanted to get it as cheap as it could; that was just about the matter." We quote further from his testimony: "Q. You say that Mr. George Marshall knew all along that this option was not for you, did he? A. Yes, sir, he did. Q. He knew you were not going to be the purchaser yourself? A. Not only that, but he knew who the purchaser was. Q. There was never any intention that you should be the purchaser, was there? A. No, sir." From the uncontradicted testimony, taken in connection with the plaintiff's express ad-

missions, it is apparent that he was employed by the Oakmont Land Company to secure land for its purposes; that pursuant to this employment he entered into the negotiations with the defendant which resulted in his obtaining the option above referred to, and the consummation of the purchase, and that the fact that he was thus acting for the Oakmont Land Company was not known to the defendant until after the sale was completed. " Where a custom exists, parties are presumed to deal in view of it, and where no agreement is made as to commissions, that they agree to pay the customary rate. In the absence of such custom, and of any agreement as to rate, the measure of compensation would be the value of the services rendered: " Potts v. Aechternacht, 93 Pa. 138; Hollis v. Weston, 156 Mass. 357 (31 N. E. Repr. 483). The testimony precludes a finding that either party supposed that the plaintiff's services in securing land for the company were to be rendered gratuitously. He undertook to act for the company in a matter within the line of his business, and rendered services pursuant to his employment for the company, which, if he had not subsequently undertaken to act for the defendant ·in obtaining a purchaser, would have entitled him to recover compensation in an action at law. This being so, the mere fact that there was no express agreement between him and the company as to his compensation would not·affect the question for decision; therefore the court committed no error in not submitting the dispute upon the subject of such agreement to the jury.

In the leading case of Everhart v. Searle, 71 Pa. 256, Chief Justice THOMPSON stated the question for decision as follows: " The case before us is rather novel. In involves a question whether the same person may be an agent in a private transaction for both parties, without the consent of both, so as to entitle him to compensation from both or either. We have the authority of Holy Writ for saying that 'no man can serve two masters; for either he will hate the one, and love the other, or else he will hold to the one and despise the other.' All human experience sanctions the undoubted truth and purity of this philosophy, and it is received as a cardinal principle in every system of enlightened jurisprudence." Upon the facts thus far referred to, the question presented for decision is pre-

cisely the same, and the principle which prevented a recovery in that case would prevent a recovery here.

We come, then, to the question whether under the special circumstances the defendant is precluded from invoking the rule. As already stated, it is not pretended that the defendant knew that the plaintiff was acting for the purchaser until after the sale, but it is claimed that George Marshall knew and assented to it, and also that there was an understanding between him and the plaintiff that the latter was to get two per cent commission from the purchaser, if he could. But apart from George Marshall's denial of this assertion, and of the indefiniteness and vagueness of the plaintiff's testimony upon the subject, there is the conclusive objection that the authority of George Marshall to act for the defendant in assenting to the plaintiff's employment by the purchaser, was not proved. The nearest approach to proof of this fact is the plaintiff's testimony as to a conversation which took place at the time the option was given. He says that he and the plaintiff went up to the defendant's desk, "and George said: ' Now, Judge, we have got to an agreement on this matter, and we are going to give Jim this option at this price, and we are going to allow him 3%;' and the Judge said : ' Well, any agreement that you make will be carried out by me.' " The two subjects of agreement as to which the defendant is alleged to have given his assent were, first, the price; second, the plaintiff's commission. There is no warrant for a finding that he assented or intended to assent to any arrangement that George Marshall might make with the plaintiff whereby the latter could act for the purchaser, and receive compensation from both sides. Furthermore, the assent which the defendant gave was not to anything that George Marshall might agree to, but to what George Marshall and his wife, who was the owner of the property, might agree to. This is apparent, we think, not only from this particular extract from the plaintiff's testimony, but it is consistent with his previous testimony that " Judge REED said that anything that George and Mrs. Marshall would agree to he would, as trustee, carry it out." There is not the slightest testimony that Mrs. Marshall ever assented to the plaintiff's acting for both sides, and receiving compensation from both. The law upon the subject is free from difficulty.

In Pennsylvania R. R. Co. v. Flanigan, 112 Pa. 558, the point decided, as stated in the syllabus, was as follows : "Where one acts in a dual capacity as agent, or servant for two separate employers, nothing less than clear proof of consent of both employers, not merely to double service, but to the double compensation, will suffice to validate an express contract with the second employers." In the case of Rice v. Davis, 136 Pa. 439, Mr. Justice STERRETT said : "Conceding, for the sake of the argument, that it would be competent for persons, circumstanced as the parties in this case were, to waive or suspend by mutual agreement the operation of a rule of public policy, it cannot be successfully contended that such agreement may be inferred either from knowledge of the fact that such rule has been violated, or from silence, or failure to dissent at the time, or either of these combined. Nothing short of clear and satisfactory proof of an express agreement to do so should be regarded as sufficient for that purpose." In Finch v. Conrade's Exr., 154 Pa. 326, Justice STERRETT, after citing and quoting from the above cases, said: "Such rules of public policy should be rigidly enforced unless it clearly appears that the parties for whose protection they were intended have, with full knowledge of all the circumstances, agreed to waive their rights thereunder." The principle of these cases has been enforced in numerous decisions, amongst which may be mentioned Cannell v. Smith, 142 Pa. 25 ; Addison v. Wanamaker, 185 Pa. 536; Wilkinson v. McCullough, 196 Pa. 205 ; Linderman v. McKenna, 20 Pa. Superior Ct. 409. A further citation of authorities is unnecessary. There is no clear and satisfactory proof that the defendant delegated to George Marshall and his wife authority to waive this rule of public policy, and no proof whatever that it was waived by her. Therefore the court was clearly right in giving binding instructions for the defendant.

Judgment affirmed.