## Evans *v.* Rockett, Appellant.

*Principal and agent—Sale of real estate—Commissions—Serving two masters.*

It is a rule of public policy that an agent for the sale of property cannot at the same time act as the agent for the purchaser thereof, and thus become entitled to compensation from both vendor and purchaser. This rule may be waived by an express agreement between the parties, but such agreement cannot be inferred either from knowledge of the fact that the rule had been violated, or from silence or failure to dissent at the time, or from all these combined. Nothing short of clear and satisfactory proof of an express agreement to waive the rule can be regarded as sufficient for that purpose.

Argued Oct. 12, 1906. Appeal, No. 69, Oct. T., 1906, by defendant, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1902, No. 1,995, on verdict for plaintiff in case of D. Z. Evans, Jr., v. Thomas T. Rockett. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit to recover commissions for the sale of real estate.

RALSON, J., charged as follows:

[The plaintiff brings this action to recover a commission which he claims is due him on a sale of real estate. He tells you that he had an agreement with Mr. Rockett that he should receive from Mr. Rockett two per cent. upon the sale of this property; that he subsequently brought Mr. Rockett and Mr. Walker together, and this resulted in the sale of the property to Mr. Walker for $35,000. He further stated that before making this arrangement with Mr. Rockett he informed him of all the facts and circumstances relating to his agreement with Walker, by which Walker was to pay him $500, and give him a carriage. If that story is true, Mr. Evans would be entitled to his commissions, which amount to $700, less what he received on account.

Mr. Rockett says, in the first place, that Mr. Evans never informed him of his agreement to get commissions from Walker until after the transaction was over. Where a real estate

broker is acting for a purchaser, he is not entitled to commissions from the seller, unless he informs the seller of his agreement with the purchaser, so that the seller is cognizant of all the facts.   If you should find in this case that Mr. Evans concealed from Mr. Rockett the fact that he was getting a commission from Mr. Walker, he would not be entitled to recover in this action.] [1]

Mr. Rockett further says that he had made an arrangement to give Mr. Evans two per cent commission on the sale, but that when he brought him to Mr. Walker's office, Rockett found that Walker would not pay cash, and offered him notes.   He says that he then left Walker's office with Evans, and said to Evans, " Are Walker's notes goods ? " and Evans said, " They are," and he said, " Well, Mr. Evans, if you will agree to wait for the payment of your commission until Walker's notes are paid, I will close this transaction."   And he says that Evans agreed to that, and that on the strength of this conversation with Evans he accepted Walker's notes.   If that story is true, the plaintiff would not be entitled to recover, because the notes have not been paid.

[You will consider all the evidence in the case, and if you believe the story of the plaintiff, he is entitled to your verdict. If, however, you believe that he did not disclose to Mr. Rockett the fact that he was getting a commission from Walker, or if you believe that he agreed to wait for his commission until Walker's notes were paid, then your verdict should be for the defendant.] [2]

[Gentlemen, if Mr. Evans did not disclose to Mr. Rockett before Rockett agreed to pay him commissions, that he was to get commission from Walker, he cannot recover.] [3]

Defendant's points which were declined were as follows :

1. If, from the evidence, the jury believe that the plaintiff made a contract with Walker, the purchaser, for commissions for the sale of the Wallingford property, he cannot recover against the defendant, and the verdict must be for the defendant.   [4]

3. Under all the evidence the verdict must be for the defendant. [5]

Verdict and judgment for plaintiff for $789.40.   Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Wayne P. Rambo*, for appellant.—This is the one attempt of plaintiff to show a promise to pay after the defendant knew that plaintiff had agreed to get commissions from the other side. The letter is unavailing : Rice v. Davis, 136 Pa. 439 ; Fulton v. Walters, 28 Pa. Superior Ct. 269.

The law has set its face against claims of agents arising in those cases where the agent has been representing both buyer and seller. The cases are numerous and convincing : Everhart v. Searle, 71 Pa. 256 ; Pratt v. Patterson, 112 Pa. 475 ; Addison v. Wanamaker, 185 Pa. 536.

*J. Hibbs Buckman*, of *Hopple & Buckman*, for appellee.

OPINION BY RICE, P. J., February 25, 1907 :

It is conceded that the defendant employed the plaintiff, a real estate broker, to procure a purchaser for certain real estate the defendant desired to sell and agreed to pay him a commission of two per cent, and that the plaintiff procured a purchaser, one Walker, to whom the defendant, after negotiations in which the plaintiff participated, deeded the property. On the trial of this action to recover the commission, the defendant claimed that the plaintiff agreed to wait therefor until the first of several notes given by Walker for the purchase money should be paid, and that these notes were not paid. The plaintiff positively denied that any such agreement was made, and as the question of fact was submitted to the jury with the very instruction the defendant asked in his second point, the verdict for the plaintiff must be regarded as conclusively settling that question so far as review on appeal is concerned.

The second ground of defense relied on at the trial was that the plaintiff made an agreement with Walker, whereby Walker was to pay him a commission for procuring the same real estate for him. That there was such an agreement between the plaintiff and Walker is undisputed. Walker testified that before the transaction between him and the defendant was closed (we quote from his deposition) : " Mr. Evans and myself went out to look at the property, which was some time, of course, previous to May 2, and Mr. Evans suggested that the property

could be bought on very reasonable terms and that he natu-
rally would help me all he could, and that his commission
would be $500 cash and what we call a yellow trap, which at
that time was in the stable—a trap with yellow running gears
—which I refused to allow him, but I told him that I would
pay him the $500." The plaintiff testified upon the same sub-
ject as follows : " My arrangement with Walker was to give
me, I think it was, $500 and some personal property in case
the matter went through in a trade arrangement. Q. Five
hundred dollars and what ? A. Five hundred dollars and a
carriage, or some trade arrangement; I don't remember ex-
actly what it was." The exact time that this agreement be-
tween the plaintiff and Walker was made is left in obscurity
by the testimony, but as it was after the plaintiff had called
the property to the attention of Walker, it seems probable it
was after the plaintiff had been employed by the defendant.
At any rate, there is no such clear and satisfactory testimony
as would support a finding that, at the time the defendant em-
ployed him, he had any knowledge of any agreement between
the plaintiff and Walker. In other words, the defendant did
not employ the plaintiff and agree to pay him a commission
with knowledge that the plaintiff was already employed by
Walker to secure the property, and was to be compensated if
he succeeded. But there is testimony which would sustain a
finding that the negotiations which resulted in the sale to
Walker extended over a considerable period of time, and that
before the sale was consummated the plaintiff informed the
defendant of his arrangement with Walker above described.
And while the testimony does not show that, before the oral
agreement for sale was made, the defendant expressly objected
(except as such objection may be inferred from his letter of
April 12 in which he stated that he considered it a mistake on
the part of the plaintiff to ask a commission of Walker),
neither does it show that he expressly agreed to the plaintiff
acting for Walker, or expressly waived any legal defense he
he had growing out of this agreement of the plaintiff to act
for Walker. The nearest approach to proof of such express
agreement or waiver is defendant's letter to the plaintiff of
May 9, in which, replying to plaintiff's letter of the same date,
he says : " I was particular to tell you that I could not assure

your commission at once but would pay out of the first money got from the deal and sooner if I had it." This, it is to be noticed, was after the sale was consummated and was not an unconditional promise, but at most was an admission that he had made a qualified promise.

It is a rule of public policy that an agent for the sale of property cannot at the same time act as the agent for the purchaser thereof, and thus become entitled to compensation from both vendor and purchaser. This rule, intended to be preventive of the possibility of wrong, rather than remedial of actual wrong done, has been rigidly enforced in transactions of this nature since the case of Everhart v. Searle, 71 Pa. 256, was decided. It is needless to cite the numerous cases in which the doctrine of that case has been recognized and applied. But in Rice v. Davis, 136 Pa. 439, the learned trial judge, while fully recognizing the general rule, thought, and so charged, that the testimony going to show the knowledge of the vendor, who was the defendant in the case, of the fact that the plaintiff was to receive compensation from the purchaser of the property which the plaintiff had been employed by the defendant to sell, and the failure of the vendor to object, would if believed by the jury, take the case out of the operation of the rule. Thus, when the case came into the Supreme Court, the record showed that the question, whether knowledge and failure to dissent would be sufficient to prevent the application of the rule laid down in Everhart v. Searle, was distinctly raised. Hence, what is said in the opinion of the Supreme Court cannot be regarded as mere generalization not necessary to the decision, but must be regarded as a distinct, emphatic and binding statement of the rule of law applicable to such a state of facts. After stating that the general principle underlying the case that an agent for the sale of property cannot at the same time act as agent for the purchaser thereof, and thus entitle himself to compensation from both vendor and vendee, is founded on the infallible declaration that " no man can serve two masters," and showing the parallel between the case in hand and Everhart v. Searle, Justice STERRETT said : " Conceding, for the sake of argument, that it would be competent for persons, circumstanced as the parties in this case were, to waive or suspend, by mutual agreement, the operation of a rule of public

policy, it cannot be successfully contended that such agreement may be inferred either from knowledge of the fact that such rule has been violated or from silence or failure to dissent at the time, or from all these combined. Nothing short of clear and satisfactory proof of an express agreement to do so should be regarded as sufficient for that purpose." He then goes on to say that there appeared to be no evidence that would warrant either the court or jury in saying that the rule insisted on by the defendent was waived by him. " He had a right to be silent, even if he knew that the plaintiff had undertaken to serve two masters, and intended to claim compensation from both." In concluding the opinion he says : " Rules of law, such as that under consideration, intended to be preventive of the possibility of wrong, rather than remedial of actual wrong, should be rigidly enforced, unless it clearly appears that the parties, for whose protection they were intended, have, with full knowledge of all the circumstances, agreed to waive their rights thereunder." The judgment was reversed without a venire. This language was reiterated in Finch v. Conrade's Executor, 154 Pa. 326, and in the recent decision of our court in Marshall v. Reed, 32 Pa. Superior Ct. 60, and we know of no case in which the statement of the general rule has been modified or qualified in the slightest degree.

Applying these principles to the case in hand, we are constrained to say that even if the instructions quoted in the first, second and third assignments were not erroneous as far as they went, they did not go far enough to give to the jury a full statement of the rule of law applicable to the case, and we do not see that the defect was cured in other portions of the charge. This may have been due to a misapprehension of the plaintiff's testimony. As we understand it, he did not swear that he told the defendant of his arrangement with Walker, " before making his arrangement with Mr. Rockett," but only that he told him before the deal was consummated. Unexplained, these instructions to which we have alluded might have been taken by the jury to mean that the controlling questions were, first, whether the plaintiff had agreed to wait for his commission ; second, whether the plaintiff disclosed to the defendant, or concealed from him, the fact that he was getting a commission from Walker. The jury, as we have seen, could

well find that he did not conceal the fact, and that the defendant knew it before the sale was fully consummated, and their verdict for the plaintiff may have been based upon their supposition that this being so, no sufficient defense had been made out. The first and second assignments are sustained.

But the request for binding instructions, which was refused, raises distinctly the question whether there was such waiver of the rule of public policy as was required in order to enable the plaintiff to recover. We are constrained to hold that a mere qualified promise, such as that referred to in the letter of May 9, which promise was not made until the transaction was completed, is not sufficient to take the case out of the operation of the rule so clearly expressed in Rice v. Davis. Therefore the point should have been affirmed.

Judgment reversed.