Onorato, Appellant, *v.* Wissahickon Park, Inc.

Argued November 16, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry N. Moran, Jr.,* for appellant.

*Stanford S. Hunn,* with him *Pearlstine, Salkin, Hardiman, Robinson & Hunn,* for appellee.

Opinion by Mr. Justice O'Brien, July 1, 1968:

This is an action in equity commenced on March 2, 1965 to obtain the cancellation of a deed, and a reconveyance, of certain premises in the Borough of Lansdale, Montgomery County, Pennsylvania, plus money damages. The alleged basis of the action is that the named defendants as agents of the plaintiffs fraudulently and in breach of their fiduciary duty procured the sale of the said premises at an inadequate price, and that the agents profited from such acts.

It is undisputed that appellant, Salvatore Onorato, along with the other two named plaintiffs, his brother Michael Onorato and his sister Anna T. Onorato Rothman, were on July 28, 1962, the owners as tenants in common of the land in question. On that date they executed an exclusive multiple listing sales contract with Kenneth Grosse, Incorporated, brokers. The land was then zoned A-1 residential, and the listing price was set at $125,000. One offer of $80,000 was received and refused. Then an offer from Walker-Murray Associates for $100,000 was accepted, contingent upon a zoning change from A-1 residential to apartment use.

Walker-Murray Associates requested Kenneth Grosse, Jr., to act as nominal developer and to procure the requested zoning change. An agreement of sale was drawn with a straw party, one Robert Nuss, named as buyer so that Walker-Murray Associates need not be identified with the zoning change due to their diverse dealings with municipal planning commissions and zoning boards. On September 18, 1962, the agreement between plaintiffs and Nuss, contingent upon the zoning change, was executed. The agreement called for settlement on or before December 17, 1962, with time of the essence, but provided for a 90-day extension if the zoning change were not obtained before the original settlement date, with settlement in no event to occur

beyond 60 days after *written* approval of the zoning change. Two extensions were agreed upon, the latter expiring May 17, 1963.

During the months following the signing of the agreement, Kenneth Grosse, Jr. took various actions indicating that he was the developer. He was so listed on a brochure printed by Walker-Murray Associates for submission to the Lansdale Borough Council in support of the petition for the zoning change, as well as on a scale model of the plan. He was so described in the North Penn Reporter, a daily paper. In testimony before the council, he referred to himself as equitable owner.

Kenneth Grosse, Jr. was also involved in negotiations in which the buyers of the entire tract agreed to deed back fifty feet of front land to Salvatore Onorato in return for fifty feet of back land. Grosse told Onorato he had authority to deed the fifty feet of front land to Onorato because, as he put it, "I was one-third."

The requested zoning change was granted in April, 1963. Wissahickon Park, Inc., the purchaser at settlement, was incorporated in Pennsylvania on May 23, 1963. Pursuant to the oral agreement between Kenneth Grosse, Jr. and Walker-Murray Associates, Grosse, in return for his services in procuring the zoning change, was named President of Wissahickon Park, and one-third owner of it.

Settlement was held on May 24, 1963, for both the main premises and the fifty foot strips. The affidavits attached to the deed to the front land strip, the mortgage sheet, and the settlement sheet all were signed by Kenneth Grosse, Jr. as purchaser on behalf of Wissahickon Park, Inc. The finding of the chancellor was that Salvatore Onorato inspected these documents and "saw or should have seen that Kenneth Grosse, Jr. was named as buyer."

On September 17, 1964, Kenneth Grosse, Jr. and Walker-Murray Associates sold all of the stock of Wissahickon Park, Inc. to Peter DePaul and Eugene DePaul whereby Kenneth Grosse, Jr. personally obtained $14,000 for his one-third interest in Wissahickon Park, Inc. The DePauls obtained a construction loan of $1,080,000 and began construction of apartments in December of 1964, and by March of 1965 had spent $100,000 for construction. This suit was filed on March 2, 1965.

The chancellor expressed his doubts as to whether the plaintiffs were properly joined, but felt it unnecessary to pass upon the issue because of his view that the plaintiff, Salvatore Onorato, failed on the merits anyway. Because of the view which we shall later take on the merits, we find it incumbent upon us to pass on the joinder issue.

Pa. R. C. P. 2227(a) provides: "Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants." An action by tenants in common to recover the entire lot is joint. Goodrich-Amram, §2227(a)-2; cf. *Axe v. Potts,* 349 Pa. 345, 37 A. 2d 572 (1944). It seems that two of the three plaintiffs, Michael Onorato and Anna T. Onorato Rothman, objected to their joinder in this suit. Rule 2227(b) provides for that contingency, stating: "If a person who must be joined as a plaintiff refuses to join, he shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder." Appellees contend that the joinder is improper because, among other reasons, no proceedings were instituted under the Pennsylvania Rules of Civil Procedure to join the two involuntary plaintiffs. However, although cases on this subject are few and hoary, it appears that nothing need be done save include the involuntary plaintiffs on the caption of the complaint.

*Sielecki v. Sielecki*, 107 Pa. Superior Ct. 291, 163 A. 375 (1932); *Pastore v. Forte*, 104 Pa. Superior Ct. 55, 158 A. 649 (1932); *Magee v. Morton B. & L. Association*, 103 Pa. Superior Ct. 331, 158 A. 647 (1931); *Baker v. Keystone Coal Co.*, 14 Luz. Leg. Rep. 5 (1907). The last-cited case points out that the involuntary plaintiff is not without protection, for he may obtain an indemnity against costs from the party who makes use of his name. All of these cases predate the adoption in 1940 of Rule 2227(b), but the requirement of joinder of all having a joint interest has long been the law in Pennsylvania.

Thus, the joinder issue in the original posture of the case was whether, in the language of Rule 2227(b), "the substantive law permits such involuntary joinder" in the case before us. The note of the Procedural Rules Committee to Rule 2227(b) states that under present rules of substantive law, proper cases for joining a party as an involuntary plaintiff exist in only the four instances where: "(1) The action is in rem. [citations omitted throughout] (2) The unwilling person can be regarded as estopped by his conduct from objecting to the prosecution of the suit without his consent. (3) The willing plaintiff and the unwilling person are joint tenants or tenants by the entireties and the action is brought to preserve or recover the jointly owned property or damages for injury to such property. (4) The action is equitable in nature and no recovery of money damages is sought." Clearly, only the third instance could be applicable here.

However, we need not decide whether the substantive law would permit joinder where a tenant in common seeks recovery of land.[1]

---

[1] The issue would be whether "joint tenants or tenants by the entireties" includes tenants in common. The language indicates not. The Procedural Rules Committee did not simply use the generic term "Joint tenants" but went further, to include tenants

Plaintiff is here seeking only damages.[2] A tenant in common need not join his co-tenants where seeking only an aliquot portion of damages. *Maloney v. Rodgers*, 184 Pa. Superior Ct. 342, 135 A. 2d 88 (1957); Goodrich-Amram, §2227(a)-2, and N. 16. However, plaintiff here is seeking not only his aliquot share of damages, but that of his brother and sister as well. Under those circumstances, joinder is required, and it has been accomplished.

We thus turn to the merits. The suit is based upon the alleged dual capacity of Kenneth Grosse, Inc. as an agent for both the seller and the buyer. We are unable to accept defendant's contention that no conflict could exist because the seller's agent was Kenneth Grosse, Inc., while Kenneth Grosse, Jr. was the buyer's agent. Surely the corporate form cannot be permitted to protect the defendants, when the buyer's agent was both a valued employee of the seller's agent and the son of its principal shareholder.

The law is clear that no man can serve two masters. Matthew 6:24; Restatement 2d, Agency, §389; *Everhart v. Searle*, 71 Pa. 256 (1872). However, as the opinion of the chancellor points out, two time-honored exceptions exist to the maxim that an agent cannot represent two principals. Contrary to the view of the chancellor, we are certain that the instant case is not one meant for application of the exception for situations where there is no conflict between the duties owed

---

by the entireties. On the other hand, common sense indicates that tenants in common are included. There appears no good reason to require tenants in common to join, but not permit them involuntary joinder. It should be remembered that the Note of the Procedural Rules Committee merely says the substantive law "apparently" allows joinder in the cases it lists. Moreover, the explanatory notes are specifically stated in the Rules not to be part of the Rules themselves.

[2] On appeal, appellant has abandoned his prayer for cancellation and reconveyance.

to the respective principals. Certainly the real estate transaction, unlike the insurance transaction in *Rossi v. Firemen's Insurance Co.*, 310 Pa. 242, 165 A. 16 (1932), represents the typical situation in which the duties owed the respective principals conflict violently. We have stated that the very reason for the general rule against a double agency is that "it is the duty of an agent for a vendor to sell the property at the highest price, and it is the duty of an agent for a purchaser to buy it at the lowest price. An agent, to a certain extent, occupies a fiduciary relation, and, to permit him to be placed in a position where he inevitably must be subjected to the demands of conflicting duties, is not only harmful to the business in which he is engaged, but also against sound morals and public policy. Such transactions must be viewed with more than suspicion for, where the relations are concealed, we have held that it amounts to fraud." *Sarshik v. Fink*, 292 Pa. 256, 260, 141 A. 39 (1928). The question for our determination is thus whether the second exception, i.e., where the principal is aware of the situation and has consented to it, *Warner Co. v. Mac-Mullen*, 381 Pa. 22, 112 A. 2d 74 (1955), applies here.

The chancellor found as a fact that "Salvatore Onorato particularly and by direct information knew that Kenneth Grosse, Jr. was a part owner of Wissahickon Park, Inc. and was individually interested in the sale of plaintiffs' land." It is commonplace that the findings of a chancellor, affirmed by the court en banc, have the effect of a jury verdict and will not be reversed if there is adequate evidence to sustain them and if they are not premised on erroneous inferences and deductions or an error of law. However, as a matter of law, he who asserts that he falls within the exception when the principal knows and consents has a heavy burden. In *Sarshik v. Fink*, supra, we discussed this burden: "In Mitchell v. Schreiner, 43 Pa. Supe-

rior Ct. 633, many of our cases are cited. The court below in that case charged the jury that the double representations would not prevent the agent from recovering where the principal had knowledge that his agent was acting for the purchaser. President Judge RICE states that this exception exists where both parties expressly agree that a person may act as the agent for both and recover, yet, as that learned jurist observes, 'It is well settled that such agreement cannot be inferred either from knowledge of the fact that the rule has been violated or from mere silence or failure to dissent at the time, or from all these combined. Nothing short of "clear and satisfactory proof of an agreement" to waive the rule can be regarded as sufficient for this purpose: Rice v. Davis, 136 Pa. 439; Penna. R.R. v. Flanigan, 112 Pa. 558; Finch v. Conrade's Executor, 154 Pa. 326; Marshall v. Reed, 32 Pa. Superior Ct. 60; Evans v. Rockett, 32 Pa. Superior Ct. 365;' Mitchell v. Schreiner, supra, p. 637. And further, on page 638, it is stated, 'Plaintiff's right to recover was made to depend only on the question as to what he informed the defendant, and not upon the question whether the defendant expressly agreed to the double employment and the double compensation,' and the jury 'might infer the defendant's assent from the mere fact of his silence and failure to dissent when, as alleged, the plaintiff informed him that he was employed by the other party.'

"There should be no question about the principal's knowledge, and, where this is clearly shown, and, notwithstanding that knowledge, the parties, without protest, continued their negotiations, again agreeing to pay commission, the contract will be sustained: Mitchell v. Schreiner, supra."

Although our reading of the record would indicate that defendants might well be able to meet this difficult burden of proof, it is not at all clear that the

chancellor had this burden in mind in his adjudication below. The evidence presented to Salvatore Onorato that Kenneth Grosse, Jr. was a developer does not rise to consent on Salvatore Onorato's part to Grosse's dual agency. Even if that evidence could be termed knowledge of a dual agency (Grosse's actions as "Developer" might well be as compatible with his representation of plaintiff as it was with his representation of the purchaser), it cannot be termed agreement to the dual agency. Nor can the mere knowledge at the settlement of Kenneth Grosse, Jr.'s role be termed agreement on Salvatore Onorato's part. This is especially true where the chancellor could only say that Salvatore Onorato "should have known" of Kenneth Grosse, Jr.'s role. If this case is retried, it will be incumbent upon the finder of fact to determine not merely what Salvatore Onorato might or should have been aware of, but what he actually agreed to accept.

The decree is vacated, and the case remanded for proceedings consistent with this opinion. Costs to abide the event.

Mr. Justice JONES and Mr. Justice EAGEN dissent and would affirm the decree of the court below.