# Fay *v.* Deady.

*Contracts—Contracts of employment — Agency — Authority of agent—Scope.*

A written contract executed by an agent in the course of business entrusted to him is binding on the principal, even though it is in excess of his instructions.

While persons dealing with an agent are required to look to his authority, yet a principal giving to an agent apparent authority is, as to the persons dealing on the faith of such authority, conclusively estopped from denying it.

In an action of assumpsit for damages for breach of contract, the case is for a jury, and a verdict for the plaintiff will be sustained, where the evidence established that the contract of employment was duly executed by the agent, and there was sufficient testimony to support the finding that the agent was acting within the course of his authority, and that the contract had subsequently been ratified by the principal.

Argued October 5, 1923.  Appeal, No. 130, Oct. T., 1923, by defendant, from judgment of Municipal Court of Philadelphia, May T., 1922, No. 84, on verdict for plaintiff in the case of John Fay v. Robert E. Deady. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Assumpsit for breach of contract.  Before KNOWLES, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,591.40, and judgment thereon.  Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*John C. Gilpin,* and with him *Graham and Gilfillan,* for appellant.

*Edwin Fischer,* of *Carr, Rose and Fischer,* for appellee.

OPINION BY GAWTHROP, J., November 19, 1923:

This was a suit in assumpsit for damages alleged by plaintiff to have resulted from the failure of defendant to permit him to perform services from September 4, 1921, to April 1, 1922, under the following contract: I, Robert E. Deady, Party of the first part, agree to pay John Fay, Party of the second part, the sum of Sixty Dollars per week for the Theatrical Seasons of Nineteen Hundred and Twenty, Twenty-one and Nineteen Hundred and Twenty-one, Twenty-two. In consideration of his services as Business Manager and Press Agent, after such duties are faithfully performed. Said party of the second part to act under advice of the Manager of the Show. In Witness this 7th day of May, 1920. Witness Hugh Deady, Witness Frank X. Silk, Robert E. Deady, Party of the First Part, John Fay, Party of the Second Part. The appeal is from a judgment entered on a verdict for plaintiff. The error assigned is the refusal of defendant's point for binding instructions and judgment n. o. v. The evidence, read, as it must be, in the light most favorable to plaintiff, justifies the following statement of facts: Defendant operated the Trocadero Theatre in Philadelphia, and was conducting a show called "Tittle Tattle." Hugh P. Deady, his nephew, was acting as treasurer. Frank Silk was the principal comedian with the show and engaged seventy-five per cent of the persons connected with it. Hugh P. Deady, at the instance of Silk, drew the above recited contract, and signed defendant's name to it. The contract, which was

drawn in duplicate, was sent by Silk to plaintiff at Syracuse, New York, where both copies were executed by him and one was mailed to defendant at the Trocadero Theatre, Philadelphia, about May 20, 1920. On August 16, 1920, plaintiff, with defendant's knowledge, entered his employment and acted as press agent and business manager for the show, receiving $60 a week during the season of 1920 and 1921, which ended in April, 1921. During part of the season he acted as manager of the show also. It is the custom in the theatrical business to send notifications to all members of companies who hold contracts to report for rehearsal on a certain date at the beginning of a season. On June 16, 1921, plaintiff wrote defendant a letter from Syracuse, asking to be advised whether he was to "go back" with the show the next season and stated: "I can't do anything in regards to looking for something else until I get some word from you......" On June 20, 1921, defendant wrote plaintiff acknowledging the letter of June 16th, and stated that he could not answer at that time, but would write after he had heard from one Gallagher. In August, 1921, plaintiff wrote defendant again, calling his attention to the contract in suit, enclosing a copy thereof, stating that he was ready, able and willing to perform his part of the contract and asking for instructions as to where and when to report. On August 29, 1921, defendant answered as follows: "Yours of the 23rd instant at hand. I am greatly surprised at the contents of your letter since you know as well as I do that your services as Press Agent were discontinued and your contract cancelled by mutual consent on your taking charge of the show as Manager in Philadelphia in October, 1920, and continued as such until the show disbanded in April, 1921, since which time the show has not been in existence." Thereupon, plaintiff secured other employment for a small part of the season of 1921-1922, for which he received $340, which he credited against the salary of which he was deprived by the alleged breach of contract.

The trial judge instructed the jury that there was no evidence to sustain a finding that defendant's signature was placed on the contract by one having authority. He submitted to them the question whether defendant ratified the contract. The question before us is whether the evidence was sufficient to sustain the verdict.

We are of opinion that the evidence was sufficient to sustain a finding that Silk was acting within the apparent scope of his authority when he directed Hugh P. Deady to draw the contract and place defendant's name at the end thereof. Silk, with defendant's permission actually hired seventy-five per cent of the persons connected with the show. He hired plaintiff and later added to his duties as press agent and business manager the duties of acting manager of the show. All of this was done with defendant's knowledge. In view of this, it cannot be held as matter of law that Silk was not acting within the apparent scope of his authority when he placed defendant's signature on the contract in suit. While those dealing with an agent are bound to look to his authority, yet it is equally well established that one clothing an agent with apparent authority is as to parties dealing on the faith of such authority conclusively estopped from denying it: Hubbard v. Tenbrook, 23 W. N. C. 351. An agreement by an agent in the course of the business entrusted to him is binding on the principal, although in excess of his instructions: Adams Express Co. v. Schlessinger, 75 Pa. 246. Where one of two persons must suffer by the act of a third person, he who has held that person out as having authority in the matter should be bound by it: Grasselli Chemical Co. v. Biddle Purchasing Co., 22 Pa. Superior Ct. 426.

But for another reason the judgment must be sustained. The evidence was sufficient to warrant a finding that defendant ratified the contract. We have no dispute with the contention of defendant's able counsel that to constitute a valid and binding ratification of an unauthorized transaction by an agent, it is essential that the

187, (1923).]          Opinion of the Court.

principal have full knowledge at the time of ratification of all material facts relative to the transaction. Our Supreme Court so held in Pittsburgh and Steubensville R. R. Co. v. Gazzam, 32 Pa. 340. But we think the facts in the case at bar bring it well within this rule and that defendant's conduct is consistent with full knowledge of the alleged two-year contract. His letter of August 29th, in answer to plaintiff's letter enclosing a copy of the contract, did not express surprise at the existence of the two-year contract. It did not set up, as does the affidavit of defense, a denial of the making of any written contract with plaintiff. It says: "Your contract was cancelled by mutual consent......in October, 1920." The words "your contract" seem to refer to the contract referred to in plaintiff's letter of August 23d. If they did, and that was for the jury, that tribunal could properly find that defendant had knowledge of the written contract in October, 1920, and that he silently consented to plaintiff's performance of his duties under it. This would amount to a ratification. Daley v. Iselin, 218 Pa. 515, relied upon by defendant, is not an authority in his favor because in that case the defendant had no knowledge of the agreement which plaintiff sought to enforce. We think the case was for the jury.

The assignment of error is overruled, and the judgment is affirmed.