Robertson C. & C. Company, Appellant, *v.* Rothey.

Argued May 5, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

464

*William A. Griffith* and with him *Wesley A. Moffat,* for appellant.

*Robert E. Anderson* and with him *James M. Nevin* for appellee.

OPINION BY PARKER, J., October 10, 1932:

The plaintiff in 1929 was operating a coal yard in or near McKeesport on which it maintained a private switch to receive merchandise in car load lots. On August 19, 1929, it secured a written agreement signed "The Baltimore & Ohio Railroad Company by C. W. Scheer, General Manager," granting to it the privilege of extending the said siding a distance of 205 feet on land of the railroad company.

In June, 1929, the defendant had procured a contract for building about three miles of paved highway in the vicinity of McKeesport and desired to have the sand, gravel, cement and other supplies required in the work shipped over the B. & O. Railroad and for that purpose consulted the freight agent in charge of the freight yards of the railroad company in that vicinity. The railroad company maintained a siding close by and parallel to the private siding of the plaintiff which was agreed upon as a convenient delivery point for defendant. Thereupon the freight agent authorized the defendant to unload the supplies needed in the performance of the road contract from the siding of the railroad and for that purpose to maintain a temporary shed and a crane and to deposit temporarily on

the land of the railroad company supplies which would be received faster than they were required. Part of the land which the defendant was to occupy and did use was the same as that which was covered by the right of way agreement of August 19, 1929. On June 20, 1929, the defendant began to receive and unload such merchandise in accordance with the arrangement with the freight agent. About two months later and after the execution of the written agreement by the general manager of the railroad company, the plaintiff desired to extend its siding when it discovered that it was occupied in part by the crane, shed and materials of defendant. Thereupon plaintiff notified defendant to remove from the premises. It was admitted by both parties that the shed was removed, but it is denied by the plaintiff that the crane and piles of materials were removed.

The plaintiff brought an action in trespass against the defendant for "defendant's obstruction of plaintiff's right of way whereby plaintiff was prevented from construction of its extension as it had anticipated." The case having been submitted to the court without a jury, judgment was entered for the defendant on the ground that the defendant's rights were prior and superior to those of the plaintiff. It is apparent that the action of the general manager and the action of the freight agent were made independently and without the knowledge of each other. The relative rights of the respective parties depended on the authority or apparent authority of the respective agents of the railroad company.

The freight agent, W. B. Peters, called as a witness by the plaintiff, testified that he had been freight agent for the railroad company at the location in question for more than forty years and that as such agent he had authority to arrange for the delivery and receipt of freight and make contracts with reference thereto; that in order to obtain the business of the defendant

and make it possible for him to enjoy the service of the railroad, he granted permission to Rothey, the defendant, to use the land of the railroad at the very point in question for unloading purposes, including the right to temporarily deposit the freight upon such land and erect a temporary shed for protection of the cement from the elements. He indicated clearly that he had granted permission to the defendant to do the very things complained of. There is no contradiction of this testimony.

Independent of this specific proof of authority on the part of the freight agent such authority would be presumed from the title of "freight agent." "Whenever a principal has placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it": 21 R. C. L. 856. "It is now well settled that when, in the usual course of the business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. This is only the application of the principle that usual employment is evidence of the powers of an agent, and the principal is held responsible for the acts of his agent within the apparent authority conferred upon the agent": 7 R. C. L. 623. It seems clear to us that when it was shown that the railroad company had designated Mr. Peters as "freight agent" it clothed him with authority to do such things as are usually performed by such agents and, as applied to this case, to arrange for the convenient unloading of freight. No evidence was offered to show the precise authority of Mr. Scheer who described himself as

"general manager" or that the privilege granted to defendant was withdrawn. Assuming that these subordinate agents of the board of directors each acted with authority the claims of the defendant are prior in time and therefore superior in right to those of the plaintiff. The relationship of defendant to the railroad was that of a shipper and when a freight agent in the performance of his duties and within the apparent scope of his authority arranged with the customer as to the manner in which the merchandise should be unloaded the railroad could not maintain an action of trespass against the defendant and would not be able so to do until such privileges were revoked. The rights of the plaintiff would not rise any higher than those of the railroad. This was not a case of a freight agent attempting to lease or convey an interest in land belonging to the railroad corporation but a mere designation of the manner in which the unloading should be performed and in that connection indicating what land of the railroad should be used.

The judgment of the lower court is affirmed.