## Eckel *v.* Eiswerth, Appellant.

Argued September 29, 1952. Before STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*John K. Myers,* with him *W. P. Geary,* for appellant.

*H. Ray Pope, Jr.,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, November 10, 1952:

Plaintiffs filed a bill in equity to enjoin the defendant, individually and as administratrix of her husband's estate, from entering on and removing clay from land belonging to the plaintiff Eckel and leased by him to the other plaintiffs. Defendant claimed the right to mine and remove clay under an earlier lease of the property made by Eckel to defendant's husband. The chancellor found the earlier lease had been terminated by abandonment and that plaintiffs were entitled to the relief prayed for. This appeal is from a final decree dismissing exceptions to the chancellor's adjudication.

By stipulation of the parties, the case was heard as of final hearing upon a written agreed statement of facts. From the latter it appeared that the plaintiff Eckel on November 25, 1943 entered into a lease with defendant's husband, J. F. Eiswerth, providing for the mining and removal of clay from the property in question in consideration of the payment of a royalty of 10¢ per ton for all clay mined and shipped from the premises, settlements and payments to be made on or

before the 20th day of each month for all clay mined, removed and shipped the previous month, with a minimum annual royalty of $240, payable quarterly in advance. With respect to the latter, the lease provided that ". . . any and all deficiencies in any one year or years between the tons of clay actually mined and removed and the royalty paid may be mined and removed by party of the second part during any succeeding year or years during the term of this lease, and on such deficiencies no further royalty shall be paid."

The lease was for no definite term but contained the following provision: "It is further agreed, that the exhaustion of clay or the failure to pay royalty for all clay mined and removed when said royalty becomes due at any time during the continuance of this lease shall terminate the same and from thenceforth both parties shall be released from any liability hereunder, except the liability of second party for unpaid royalty at the time of forfeiture."

On or about December 2, 1948 the minimum royalty was reduced to $180. The lessee Eiswerth died on December 8, 1949 and devised and bequeathed his entire estate to his wife, the defendant Hilder J. Eiswerth. Eiswerth did not operate the lease after the fall of 1944, but during his lifetime paid the minimum royalty in advance until the early part of 1948. The chancellor found that a payment of $180 made on December 2, 1948 evidently provided for arrearages of payments in advance due May 25th, August 25th and November 25, 1948, and that a payment made by Eiswerth on February 25, 1949 paid royalty in advance to November 25, 1949 in the reduced minimum royalty of $180. There is nothing in the agreed statement of facts to indicate any consideration for the reduction in minimum royalty which is stated therein to have occurred on December 2, 1948. In any event it is clear that the last payment

of royalty by the lessee Eiswerth was made on February 25, 1949 covering the period ending November 25th of that year and that no payments of royalty were made thereafter, either by his estate or by defendant individually.

As stated, lessee Eiswerth did not operate under the lease after 1944 and there is nothing in the agreed statement of facts to indicate that the defendant as administratrix or individually, operated, except an attempt by her in October of 1951. This was after notice from plaintiff Eckel in March of 1950 that the lease was terminated and after plaintiff Eckel had entered into a new lease with John J. Schmader and Daniel J. Schmader, the co-plaintiffs herein, who have been regularly paying to Eckel the royalties required thereunder.

The last payment of royalty under the Eiswerth lease, made by Eiswerth on February 25, 1949, was by check for $180, covering the period ending November 25, 1949, and to this check a slip was attached reading ". . . no further royalty need be paid until J. F. Eiswerth again starts to operate the lease." Defendant contends that this was an offer to pay this sum for all future royalty in case there was no operation under the lease, and that Eckel's acceptance of the check payment constituted a modification of the lease with such effect. Under this contention if Eiswerth never operated, no one could, and Eckel would suffer a restriction on his title and ownership that would make his property to him absolutely valueless. But aside from this untoward result, defendant's contention cannot prevail because of want of consideration. There is nothing in the record to indicate any dispute as to amount of royalty due, any agreement by plaintiff Eckel that the $180 payment of February 25, 1949 was to stop further royalty payment, nor any agreement that the

494

advance royalty payments were of such an amount as to pay for all clay in place. Without some agreement between the parties of which the agreed statement of facts is devoid, the payment of February 25, 1949 can only be construed as being a payment of part of the amount due under the contract. The acceptance of the check with the memorandum attached did not result in a discharge of the entire obligation. The transaction cannot be construed as an accord and satisfaction: See *Lucacher v. Kerson et al.*, 355 Pa. 79, 48 A. 2d 857.

But defendant claims that even if there was a default in the payment of minimum royalty, plaintiffs' remedy was by suit in assumpsit to recover therefor and not by a proceeding to rescind the lease, and cites *Girolami et al. v. Peoples Natural Gas Company*, 365 Pa. 455, 76 A. 2d 375.

In the *Girolami* case lessor claimed an abandonment of the lease and relied principally upon the nonpayment of rental. To establish abandonment there must be an intention to abandon and conduct by which the intention is carried into effect. In the *Girolami* case the Court at p. 460 stated: "The essential element that distinguishes abandonment from other grounds for divesting the rights of the holder of an oil and gas lease of the type here involved is the intention of the holder to give up the lease. If he did not so intend, the case is not one of abandonment, however remiss he may have been in the performance of his obligations: . . .". In the *Girolami* case the record was replete with evidence showing that lessee did not intend to abandon the lease and rescission was denied.

In the instant case there is no evidence of an intention not to abandon. On the other hand there was evidence other than the failure to pay the royalties from which the court could have found an abandonment.

Although the burden of proof of abandonment is upon the lessor, such burden can be established by circumstantial evidence. It was for the court to determine whether or not there was an abandonment from the agreed facts and the reasonable inferences therefrom. The following excerpt from the chancellor's adjudication in our opinion properly disposes of the case in this regard: "We have therefore a lease for mining of clay, in which there is no date for termination, and in which lessee was to pay a minimum royalty annually, a lease which has not been operated for six or seven years and on which no royalty has been paid for nearly three years, during which time three notices of termination have been received by lessees or their representatives. There is nothing in the record to show any property of lessees to be on the leased premises, any activity on the premises for the past six or seven years or any desire or attempt to operate the property, until it was leased to another party and on October 2, 1951 operation was again started of some nature by road building. The record shows no reason for failure to pay royalty or operate the property; there is nothing in the record to negative the fact that it was the intention of defendants to abandon the property; they did not operate, gradually fell back in royalty payments, these finally stopped and the original lessee died; no action of lessees was taken on original notice of lessors as to termination. We find an intention of lessees to abandon the property: Girolami et al. v. Peoples Natural Gas Co., 365 Pa., 455."

Decree affirmed at cost of appellant.