336 A.2d 871
**TURNWAY CORPORATION, a Pennsylvania Corporation**
**v.**
**Joseph SOFFER and Violet Soffer, his wife,**
**Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 9, 1974.

Decided April 25, 1975.

Reargument Denied June 18, 1975.

---

450

Judd N. Poffinberger, Jr., David H. Ehrenwerth, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Leonard J. Wingert, Carson & Wingert, McKeesport, for appellants.

John Daley, Brennan & Brennan, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellee, Turnway Corporation, brought this action in equity first to enjoin appellants from interfering with

appellee's possession, use, and enjoyment of 1.274 acres of land to which appellants hold title in fee but which appellee claimed is subject to its rights and interest under the terms of a fifty-year lease executed in May of 1952. Secondly, appellee sought to enjoin the appellants to remove certain sanitary and storm sewers from land immediately adjacent to the 1.274 acres, which land is held in fee simple by the appellee. Appellee claimed that the existence of the sewers on its land constituted a continuing trespass. The court below granted both claims for relief and awarded appellee money damages for the loss of fair rental value during the periods when it was deprived of use of the two different parcels of land involved, plus expenses incurred by appellee in protecting its property from mulfunctions of the trespassing sewer lines. We affirm the final decree of the court en banc, which had upheld the chancellor.

Turnway is a Pennsylvania corporation organized in 1952. At all times material hereto, James A. Hall was President and Director of the corporation, James H. Brennan was Secretary and Director of the corporation, and T. Robert Brennan was Treasurer, Assistant Secretary and Director. In 1951 James Brennan held record title to a six-acre tract of land on the southerly side of William Penn Highway in Wilkins Township, as trustee for George Beech and Mary Beech, his wife. One of Turnway Corporation's first acts in 1952 was to enter into a lease with James Brennan for the six acres of land for a term of fifty years, at a rental of $250.00 per month.

Prior to 1961, Joseph and Violet Soffer, appellants in this case, and Benjamin and Freda Thorpe had acquired a substantial amount of property immediately adjoining this six-acre tract. On this property, the Soffers and Thorpes constructed a complex of office and apartment buildings known as "Penn Center."

In 1961, the Soffers and Thorpes began negotiations with James Brennan, who expressly represented both Turnway and himself, looking to a possible development of the two properties for the mutual benefit of all parties. As a result, an agreement was reached whereby the Soffers and the Thorpes were to obtain a ninety-nine year lease on 1.274 acres of Brennan's six acres; in return, the Soffers and Thorpes were to construct a fifty-foot right-of-way across the 1.274 acres, thus connecting their Penn Center property with the property leased by Brennan to Turnway Corporation. Although this leasing arrangement was reduced to writing, it never became effective because the Beech family instructed James Brennan not to deliver the executed copies of the lease to the Soffers and Thorpes.

Negotiations between the parties nevertheless continued, and a second agreement was reached. Under an agreement executed on September 17, 1962, Violet Soffer and Freda Thorpe agreed to purchase from James Brennan the same 1.274 acres which were to have been leased to the Soffers-Thorpes under the ineffective ninety-nine year lease. This 1962 agreement provided that Turnway got full title to the remainder of the six-acre tract, without any express mention of a right-of-way over the 1.274 acres. Turnway Corporation as such, did not sign this second agreement but the agreement was negotiated and signed by the same individual, James Brennan, who negotiated the undelivered ninety-nine year lease. Settlement took place on January 15, 1963.

Some time late in 1962 and during 1963 the Soffers and Thorpes directed construction of sanitary and storm sewer lines, with manholes and inlets, serving the Penn Center complex through the 1.274 acres previously referred to and, in addition, through 250 feet of the property known as Turnway property. Some time in August of 1970 Turnway undertook to commercially develop the westerly portion of its property to which it had received

title and, in the process of excavating and grading the same, discovered for the first time the existence of the sewer lines, manholes and inlets which had been buried under ten feet of earth. The location of the sewer lines on the Turnway property caused the Turnway Corporation to discontinue its plan for the commercial development of its property, thereby resulting in the loss of the fair rental value of the vacant land.[1]

In July of 1964 the Thorpes conveyed all their interest in the property known as the Penn Center complex, together with the 1.274 acres of land, to the appellants herein Joseph Soffer and Violet Soffer, his wife.

Commencing in 1965, T. Robert Brennan wrote a series of letters to Joseph Soffer and his attorney, wherein he demanded that appellants build the allegedly agreed-upon right-of-way to join the Penn Center complex with the Turnway property and that if the Soffers refused, they reconvey the 1.274 acres to Turnway. These demands were predicated upon the Turnway officers' mistaken impression that the ninety-nine year lease was in effect and/or that the September 1962 agreement to convey had retained the right-of-way as part of the consideration. One letter, dated October 26, 1970, in addition to asking for the right-of-way, adverted to the fact that Turnway had discovered that Soffers' sewers extended onto Turnway's property. The letters made no reference whatsoever to the existence of a fifty-year lease.

Appellee's complaint originally sought to require appellants to reconvey the 1.274 acres of land because appellants had not furnished the right-of-way. The Soffers answered that they had purchased this 1.274 acres

---

1. On two occasions, the first beginning in September of 1970 and then again in May of 1972, the sanitary sewer line was clogged and blocked, thereby causing the flow of raw sewage from the Penn Center complex to spill on to the Turnway property in great volume. The appellee, in order to alleviate damage, was required to obtain the services of a general contractor to undertake to repair the sewer lines.

in 1963 from James and Ruth Brennan for $15,000 and that they had no obligation to furnish a right-of-way. To this end, appellants introduced a deed and a report from the Union Title Guaranty Company to establish their unencumbered title.

Midway through the trial appellee sought permission to amend its complaint by dropping the request for reconveyance of the 1.274 acres and, instead, asserted that it had a leasehold interest in those same acres under the terms of the fifty-year lease. This amendment was not offered until after the trial had begun and after the death of James Brennan, Secretary and Director of Turnway, who had conducted most of the negotiations with the Soffers. Turnway's original complaint had specifically averred that the fifty-year lease, which became the basis of appellee's amended complaint, had been canceled. This admission was retracted in the amended complaint.

## I.

Initially, we must dispose of appellants' contention that it was error for the chancellor to allow appellee to amend its complaint midway through trial. At the time the amendment was offered, appellants' counsel strenuously objected to this amendment on the grounds that it changed the entire theory of the case and came as a complete surprise. The chancellor, after allowing the amendment, granted the defense a continuance from January 5, 1973, until June 27, 1973. Appellants filed no exceptions relating to the amendment of pleadings. As a general rule, an exception to an equity adjudication is necessary to preserve an objection for appeal. *Rankin v. Rogers*, 305 Pa. 468, 157 A. 908 (1932). Pa.R.C.P. No. 1518, 12 P.S. Appendix, provides in part that "[m]atters not covered by exceptions are deemed waived, unless, prior to final decree, leave is granted to file exceptions raising these matters." The chancellor must have for-

mal notice that the excepting party does not acquiesce in the ruling and intends again to claim the benefit of an objection. Since the chancellor was not given the opportunity to review the propriety of the amendment of the complaint, the objection is waived. *Rothermel Estate,* 461 Pa. 1, 334 A.2d 603 (filed Mar. 18, 1975); *Logan v. Cherrie,* 444 Pa. 555, 282 A.2d 236 (1971).

## II.

■ Appellants also felt that appellee should be precluded from asserting the validity of the fifty-year lease after Turnway had failed to assert this leasehold interest for ten years. As to the trespass count, appellants maintain in this appeal for the first time that it was prejudicial to them to allow the appellee to seek remedies for the installation of the sewer systems because, as appellants claim, appellee knew of the existence of the sewers on its property from the time of the installation.

Laches, an affirmative defense, was not raised in the pleadings. It was advanced in the court below when the appellee sought to amend its complaint. This amendment was not offered until after the death of James Brennan, who had been the affiant on the original complaint and who had conducted most of the relevant negotiations between appellee and appellants. But laches was not asserted in the appellants' exceptions to the adjudication. Although we might have overlooked the failure to plead laches in this case because at least one basis for the defense grew out of the mid-trial amendment of the complaint, nevertheless we cannot excuse the failure of the appellants to assert the defense in their exceptions to the adjudication. The defense of laches has also been waived. Pa.R.C.P. 1518. *Rothermel Estate, supra.*

## III.

As to Count I—the leasehold interest of appellee in the 1.274 acres of land—appellants assert that the chancellor

erred in finding as a fact that at all times concerning the agreement to convey and the conveyance of the 1.274 acres to the Soffers and Thorpes, James H. Brennan was acting solely as Trustee for the Beech family and not in his capacity as an officer or agent of the Turnway Corporation. Appellants rely on the doctrine of agency by estoppel, which, if meritorious, would mean that James H. Brennan was an agent of Turnway when he conveyed all the "right, title, and interest" in the 1.274 acres to the Soffers and Thorpes and, thus, the appellee thereby surrendered its leasehold interest in the 1.274 acres by the conveyance of the fee to the Soffers and Thorpes.

■■ Agency by estoppel is defined by Section 8B of the Restatement (Second) of Agency [2] and the doctrine has been embraced by this Court in *Reifsnyder v. Dougherty*, 301 Pa. 328, 152 A. 98 (1930). *Reifsnyder* emphasized two basic elements of agency by estoppel: (1) there must be negligence on the part of the principal in failing to correct the belief of the third party concerning the agent; and (2) there must be justifiable reliance by the third party. Neither is present here. Agency by estoppel is generally deemed to be closely related to apparent authority. 2A C.J.S. Agency § 157 (1972). Thus, alternatively stated, a principal who clothes his agent with apparent authority is estopped to deny such authority. *Robertson Coal & Coke Co. v. Rothey*, 106 Pa.Super. 463, 162 A. 332 (1932); *Fay v. Deady*, 82 Pa.

2. "§ 8B. Estoppel—Change of Position

(1) A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability to persons who have changed their positions because of their belief that the transaction was entered into by or for him, if

   (a) he intentionally or carelessly caused such belief, or

   (b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts.

    *     *     *     *     *     *     *     *

Super. 187 (1923). Thus, what we have said about apparent authority is equally apposite to agency by estoppel:

> "An agent cannot, simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent."

*Jennings v. Pittsburgh Mercantile Co.*, 414 Pa. 641, 645, 202 A.2d 51, 54 (1964). Thus, there must be some carelessness or negligence on the part of Turnway in order to hold it bound to the 1962 conveyance as a principal.

The undelivered ninety-nine year lease and the 1962 agreement of sale were reached as a result of continuous negotiations between James Brennan and the Soffer-Thorpe interests. In September of 1961, when the negotiations for the ninety-nine year lease started, the Turnway Corporation considered and agreed, via its Board of Directors, to have Turnway join in the ninety-nine year lease. James Brennan was the express agent of the corporation in this transaction. The ninety-nine year lease was specifically signed "Turnway Corp. by [signature] James A. Hall, President."

There is no evidence that James H. Brennan ever represented himself as an agent of the appellee-corporation during the negotiations for the 1962 conveyance. Consequently, appellee cannot be faulted for failing to disavow the agency. Brennan's "agency" was admitted by the appellants to have been only a "presumption" on their part. And certainly there was no evidence that appellee was aware of appellants' presumption. Even if the appellants were somehow found to have justifiably relied upon their own presumption, there was no negligence or carelessness by appellee.

But, further, any presumption or reliance by the appellants was unjustified. In the absence of any representations of agency by Brennan or Turnway, the only

fact which could justify reliance is the prior episode of negotiations which culminated in the ninety-nine year lease. To paraphrase *Jennings, supra,* this one-time, prior association in such extraordinary circumstances, will not justify appellants' reliance:

"[I]n order for a reasonable inference of the existence of apparent authority to be drawn from prior dealings, these dealings must have (1) a measure of similarity to the act for which the principal is sought to be bound, and, granting this similarity, (2) a degree of repetitiveness.

    *     *     *     *     *     *     *     *

Finally, the extraordinary nature of this transaction placed [appellants] on notice to inquire as to [Brennan's] actual authority, particularly since [the Soffers and Thorpes] were an experienced real estate . . . team."

414 Pa. at 645, 647, 202 A.2d at 54–55. Given the extraordinary nature of the transaction, the fact that the Soffers were well aware of the existence of a fifty-year lease during negotiation of the undelivered ninety-nine year lease coupled with the absence of any reference to the lease in the agreement to convey, the fact that the Soffers and Thorpes were experienced real estate developers, and the absence of any oral or written indication of Turnway's joinder as a principal in the 1962 agreement, the Soffers' presumption of Brennan's agency was not justifiable.

### IV.

Appellants also state as to Count I that the chancellor erred by finding that the appellee had not abandoned its interest under the terms of the fifty-year lease. An abandonment of the premises by the tenant is a relinquishment which, as a matter of law, justifies immediate repossession by the landlord. *Girard Trust Co. v. Tremblay Motor Co.,* 291 Pa. 507, 140 A. 506 (1928).

In order to establish abandonment of the lease, there must be found as a matter of fact (1) an intention to abandon and (2) conduct by which the intention is carried into effect. *Eckel v. Eiswerth,* 371 Pa. 490, 92 A.2d 174 (1952). For several years, appellee asserted its unjustified claim to have a right-of-way constructed by the appellants over the 1.274 acres. This claim was based on the appellee's officers' misapprehension that such a right existed under the inoperative ninety-nine year lease. Nevertheless, appellee continually asserted a leasehold interest, even if under the wrong lease instrument. We are satisfied that there could not be an intention to abandon under those circumstances.

However, appellants point out that appellee did nothing with the land for over ten years. The acreage involved was and still is vacant land. Moreover, neither rent nor any increase in taxes has been paid by appellee to appellants since appellants took title to the land in 1963. Nevertheless, whether there was an intention to abandon is a question of fact which the chancellor answered in the negative. In equitable actions, the findings of the chancellor approved by the court en banc are equivalent to a jury verdict, and, where supported by evidence, though in dispute, they are controlling on appeal. *Onorato v. Wissahickon Park, Inc.,* 430 Pa. 416, 244 A.2d 22 (1968); *Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962). There is adequate evidence to sustain the chancellor's finding of fact in this regard.

## V.

Finally, as to Count II—the trespass action—appellants argue that the sewage facilities were constructed with the knowledge and consent of the appellee's agent, James H. Brennan, and that, therefore, appellants had a license to place the sewer system on appellee's property. Appellants claim that they were expressly authorized to put sewers on appellee's land by the terms of

Section 9 of the Agreement to Convey of September 17, 1962, wherein it was stated:

"It is agreed that immediately upon the execution of this agreement by all parties, the parties of the second part [the Soffers and the Thorpes] *shall have the right to enter upon the land for the purpose of extending an existing storm sewer* and for the purpose of placing fill thereon. . . ." (Emphasis added)

This argument is initially undermined by our earlier holding here that the chancellor was correct in finding that James H. Brennan was not an agent for Turnway during the negotiations and execution of the conveyance agreement. Furthermore, it would be a strained and unnatural interpretation of the term "the land" in Section 9, above, if we held that term to refer not only to the 1.-274 acres conveyed to appellants but also to the remainder of the six-acre tract which was conveyed to Turnway. Reading the agreement in its entirety, we can only interpret "the land" to mean the 1.274 acres which were soon to be conveyed to the appellants. There was no express license to place the sewers on appellee's land.

Appellants also ask us to find that an implied license existed on the basis of equitable estoppel. "When the owner of land, with full knowledge of the facts, tacitly permits another repeatedly to do acts upon the land, a license may be implied from his failure to object." *Leininger v. Goodman*, 277 Pa. 75, 77–78, 120 A. 772, 773 (1923); *Accord, Bieber v. Zellner*, 421 Pa. 444, 220 A.2d 17 (1966). *Cf.* Restatement of Property § 516 com. c. The implied license theory must fail, however, because there is sufficient evidence to show that the appellants placed no reliance on the silence of the appellee as the sewage systems were being installed. Indeed, none of the parties were aware that the sewers were on appellee's land.

It is conceded that the sewer installation project was staked out with flags for months, and the

grading operation was a highly visible one. Further, James Brennan and R. Robert Brennan had visited the construction site on at least one occasion. From these facts the chancellor might have inferred, contrary to appellee's assertions, that Turnway officers had knowledge that the Soffer-Thorpe sewer lines extended into Turnway property. But the following paragraph from the Adjudication of the chancellor is most telling:

"The most significant testimony bearing on this Count of the complaint was offered by the defendant, Joseph Soffer. In his deposition, he testified that he was not aware that the sewer lines, manholes and inlets were constructed on the Turnway property and did not discover this until 1970 and knew of no basis on which the facilities were constructed on Turnway property. If he did not know that the construction was on Turnway property, how can it be said that Turnway Corporation knew or consented to said construction."

The chancellor's conclusion as to Turnway's knowledge is immaterial since a permissible conclusion which can be drawn from Soffer's deposition is that there was no reliance by the Soffers and Thorpes upon the silence of the appellee. Since appellants had no knowledge that their sewer systems were intruding upon appellee's land, and since the deposition of appellant, Joseph Soffer, indicated that he knew of no basis upon which the intrusion was justified, we will sustain the finding of the chancellor that there was no implied license by equitable estoppel. It is essential that persons claiming equitable estoppel have relied upon the representation or conduct of the person sought to be estopped. *Stratford Arms, Inc. v. Zoning Board of Adjustment*, 429 Pa. 132, 239 A.2d 325 (1968); *Gianni v. Union Bank & Trust Co.*, 311 Pa. 121, 166 A. 553 (1933); 14 P.L.E. Estoppel § 23. A correct result will be sustained if it can be sustained for any reason whatsoever. *See, e. g., International Union of Oper-*

*ating Engineers v. Linesville Construction Co.,* 457 Pa. 220, 322 A.2d 353 (1974); *Sherwood v. Elgart,* 383 Pa. 110, 117 A.2d 899 (1955). Since no license by estoppel could exist, appellee was entitled to remedies for the trespass.

Decree affirmed. Costs on appellants.

NIX, J., concurs in the result.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice (dissenting).

On this record appellee has failed to establish its equitable entitlement to the relief granted.

The adjudication granting equitable and compensatory relief is the result, in my view, of a series of procedural and substantive errors involving basic doctrines of the law of contract, property and landlord-tenant as well as misapplication of equitable principles.

I dissent and would reverse and grant a new trial.