J-S26030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEAN S. LEHMAN, GENE S. LEHMAN, WILBERT F. LEHMAN, SR. AND ROBERT J. LEHMAN | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| STEVEN AND KIMBER SMITH AND MICHAEL AND DOROTHEA LEHMAN | | No. 295 MDA 2021 |
| Appellants | | |

Appeal from the Judgment Entered March 26, 2021
In the Court of Common Pleas of Lycoming County
Civil Division at No. 18-1552

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:            **FILED: DECEMBER 8, 2021**

This appeal arises from a dispute between neighboring family members — primarily five brothers — concerning an easement.  Appellees Dean S. Lehman, Gene S. Lehman, Wilbert F. Lehman, Sr., and Robert J. Lehman (the Four Lehman Brothers), sued their fifth brother and his wife, Michael Lehman and Dorothea Lehman, and Michael and Dorothea's daughter and son-in-law, Kimber and Steven Smith (collectively, Appellants).  The Four Lehman Brothers successfully sought a judicial determination of an easement on Appellants' property.  Upon review, we affirm in part and reverse in part.

All five Lehman brothers jointly own land known as the Busler Tract. The trial court explained:

Samuel and Mae Lehman, parents to [the five brothers], first obtained the Busler Tract in 1956. In 1983, Mae Lehman, having become the sole owner of the Busler Tract following the death of Samuel Lehman, placed the property into an irrevocable trust on behalf of her sons. In December of 1987, Michael Lehman and his wife, Dorothea A. Lehman, purchased a property adjacent to the Busler Tract, Tax Parcel No. 25-247-117 ("the Lehman Farm").

In 1994, the five Lehman brothers entered into a "Real Estate Ownership Agreement" [(the Agreement)] in anticipation of taking joint ownership of the Busler Tract. The Agreement provided that the brothers would take the Busler Tract as tenants-in-common with right of first refusal if one party sought to sell or transfer his interest in the property. The brothers obtained legal title to the Busler Tract in 1995.

After Samuel and Mae Lehman obtained the Busler Tract in 1956, the Lehman family had regularly used an access road on bordering property, now owned by David E. Winter and Norma M. Winter, to access the Busler Tract for hunting and to gather firewood [(the Winter property)]. In 1996, shortly after the [five] Lehman brothers purchased the Busler Tract [and at the request of the Winter family], Dean Lehman, with the assistance of Michael Lehman, relocated this access road onto a southern portion of the Lehman Farm. [The Four Lehman Brothers] have since utilized the relocated roadway to access the Busler Tract.

Trial Court Opinion, 9/22/20, at 1-2.

Real estate tax assessment maps, which the Four Lehman Brothers attached as Exhibits "A" and "B" to their complaint seeking a judicial determination of easement, provide a visual illustration:



In January of 2018, Michael and Dorothea Lehman transferred the Lehman Farm to their daughter, Kimber I. Smith, and her husband, Steven A. Smith. Around the time of the transfer, Michael Lehman made statements to Dean Lehman that he or his successors-in-interest, Kimber Smith and Steven Smith, could

block the existing access road at the point that it crossed the Lehman Farm at any time, prompting [the Four Lehman Brothers] to file this quiet title action. . . .

Complaint, 10/23/18, at 2.

In response to the Four Lehman Brothers' complaint seeking a judicial determination of easement, Appellants filed an answer and new matter. On September 9, 2020, the court held a bench trial, and on September 22, 2020, entered a verdict, opinion and order finding that the Four Lehman Brothers established an easement along the access road of the Lehman Farm. Appellants filed a post-trial motion on October 6, 2020, and the Four Lehman Brothers filed a post-trial motion on October 13, 2020. The trial court recognized that both parties' motions were untimely, but considered the merits of the motions given "certain typographical and factual errors" on the part of the trial court. Amended Trial Court Opinion, 2/4/21, at 2. **See also D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.**, 71 A.3d 915 (Pa. Super. 2013) (trial court can exercise equitable powers to hear untimely post-trial motions).

On February 4, 2021, the trial court issued an amended verdict, opinion and order affirming its finding that an easement existed for the access road on the Lehman Farm; the court also corrected typographical errors and granted the Four Lehman Brothers' request for attorneys' fees. The court further directed the Four Lehman Brothers to submit an itemization of "other" fees and costs, noting that the court would issue another order "to include the amount of legal fees and costs to be paid following the fourteen day period for

submission of an itemization and objections." Amended Trial Court Opinion, 2/4/21, at 7. The Four Lehman Brothers filed an itemization of fees and costs on February 8, 2021; Appellants did not file objections. On February 24, 2021, prior to the court entering an order regarding fees and costs, Appellants filed a notice of appeal.

On March 5, 2021, the trial court entered an order awarding the Four Lehman Brothers $10,513.00 based on the itemization they filed pursuant to the court's February 4, 2021 directive. That same day, the court ordered Appellants to file a Pa.R.A.P. 1925(b) statement of matters complained of on appeal, and Appellants timely complied. The trial court then filed an opinion stating "its February 4, 2021 Amended Verdict, Opinion, & Order sufficiently address[es] the first six issues raised in the concise statement of errors. Therefore, the Court wishes to rely on its prior opinions as to those errors." Pa.R.A.P. 1925(a) Opinion, 3/26/21, at 1. The court also addressed Appellants' seventh issue challenging the court's jurisdiction to enter the March 5, 2021 order. The court recognized that Appellants filed their appeal prior to the court's March 5, 2021 order, and found the appeal premature because the court had "not entered a final judgment" and had "made clear" its intent to "subsequently amend the judgment to include a specific damages amount." *Id.* at 3. The court also ordered the prothonotary "to docket a

judgment in favor of [the Four Lehman Brothers] and against [Appellants], with damages awarded in the amount of $10,513.00."[1] *Id.*

On appeal, Appellants present seven questions for review:

[1.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION BY FAILING TO PROPERLY APPLY THE EXISTING STANDARD FOR EQUITABLE ESTOPPEL WHICH REQUIRES THAT "EQUITABLE ESTOPPEL ARISES WHEN ONE BY HIS ACTS, REPRESENTATIONS OR ADMISSIONS OR BY HIS SILENCE WHEN HE OUGHT TO SPEAK OUT, INTENTIONALLY OR THROUGH CULPABLE NEGLIGENCE INDUCES ANOTHER TO BELIEVE CERTAIN FACTS TO EXIST AND SUCH OTHER RIGHTFULLY RELIES AND ACTS ON SUCH BELIEF, SO THAT HE WILL BE PREJUDICED IF THE FORMER IS PERMITTED TO DENY THE EXISTANCE OF SUCH FACTS." *See e.g. Northwestern Nat. Bank v. Commonwealth*, 345 Pa. 192 (1942)?

[2.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION IN THAT THE COURT'S FINDINGS DO NOT SUPPORT AN EASMENT BY ESTOPPEL?

[3.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION BY GRANTING JUDGMENT DESPITE THE FACT THAT THERE WAS NO LOCATION OF THE RIGHT-OF-WAY BY EITHER A SURVEY OR OTHER REFERENCE IN THIS MATTER?

[4.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION BY FAILING TO INDICATE THE WIDTH OF THE RIGHT-OF-WAY IN ANY DOCUMENTS AND/OR PROCEEDINGS?

[5.] WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION IN THAT THE AGREEMENT THAT

---

[1] Judgment was entered March 26, 2021. "[I]n the interests of judicial economy, we will consider this appeal as filed after entry of judgment." *Tohan v. Owens-Corning Fiberglas Corp.*, 696 A.2d 1195, 1197 n.1 (Pa. Super. 1997).

THE LOWER COURT RELIE[D] UPON DOES NOT MENTION THE RIGHT-OF-WAY AT ISSUE?

[6.]   WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION IN THE FINDING OF THE COURT AWARDING ATTORNEYS' FEES THAT IS NOT SUPPORTED BY THE LANGUAGE OF THE AGREEMENT AT ISSUE?

[7.]   WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW / ABUSE OF DISCRETION IN THAT THE NOTICE OF APPEAL IN THIS CASE WAS FILED ON FEBRUARY 24, 2021, AND THE LOWER COURT CONTINUED TO ENTER ORDER OF COURT THEREAFTER ON MARCH 5, 2021, IN LIGHT OF THE FACT THAT THE JURISDICTION IN THIS MATTER WAS REMOVED FROM THE TRIAL COURT WITH THE FILING OF THE NOTICE OF APPEAL?

Appellants' Brief at 6-7.

We begin by recognizing:

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

Moreover, [t]he [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

***Century Indemnity Co. v. OneBeacon Ins. Co.***, 173 A.3d 784 (Pa. Super.

2017) (citations omitted).

In their first two issues, Appellants argue the trial court erred in determining that an easement existed because the Four Lehman Brothers did not demonstrate they "expended money or labor in reliance of the permitted

use." Appellants' Brief at 12. They also assert "none of the actions of the [Four Lehman Brothers] constituted changes that would prevent [their] land from being restored to its original position." *Id.*

An easement is a unique form of real property. It grants not a right of possession but a right of use. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2 cmts. a, d (2000); GRANT S. NELSON ET AL., CONTEMPORARY PROPERTY 688–89 (1996); *see also Clements v. Sannuti*, 51 A.2d 697, 698–99 (Pa. 1947). It affects two parcels of land: the owner of the dominant estate enjoys the benefits of the easement while the owner of the servient estate must honor and endure the burdens. *Morning Call, Inc. v. Bell Atlantic–Pa., Inc.*, 761 A.2d 139, 142 (Pa. Super. 2000); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §§ 1.2, 1.3, 1.5. An easement is not independently alienable but is conveyed concurrently with the estate to which it is tied. *See id.* §§ 5.1, 5.6.

Easements may be created by express agreement, by prescription, by implication, by estoppel, or by operation of law. *Morning Call*, 761 A.2d at 142. "An easement by estoppel — traditionally considered an irrevocable license in Pennsylvania — will arise when a landowner permits a use of property under circumstances suggesting that the permission will not be revoked, and the user changes his or her position in reasonable reliance on that permission." *Knapp v. Norfolk Southern Railway Co.*, 350 F.Supp.2d 597, 611-12 (M.D. Pa. 2004); RESTATEMENT (THIRD) OF PROPERTY:

SERVITUDES § 2.10. The permission does not need to be express, but may be inferred through the owner's acquiescence in an open and obvious use of the land. *See Turnway Corp. v. Soffer*, 336 A.2d 871, 878 (Pa. 1975); *see also* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.10 cmt. e. An owner who allows use of the land to continue "under circumstances in which it is reasonable to foresee that the [user] will substantially change position" is estopped from denying the existence of an easement in favor of the user. *Id.* § 2.10(1); *accord Morning Call*, 761 A.2d at 144.

In addition to finding an easement, the trial court determined the Four Lehman Brothers possessed an irrevocable license. With respect to licenses, generally, this Court has stated:

> Licenses are often compared to easements. In general, a license is a mere personal or revocable privilege to perform an act or series of acts on the land of another, which conveys no interest or estate. A license is distinguishable from an easement because it is usually created orally, is revocable at the will of the licensor, and is automatically revoked by the sale of the burdened property.

*Morning Call*, 761 A.2d at 144 (citations omitted). Though generally revocable, a license may become irrevocable under the rules of estoppel. In those circumstances, it is similar to an easement.

> The Pennsylvania Supreme Court adopted the equitable doctrine of irrevocable license in the mid-nineteenth century stating that **a license to do something on the licensor's land when followed by the expenditure of money on the faith of it, is irrevocable, and is to be treated as a binding contract.** The Court subsequently explained that such a license, while not strictly an easement, is in the nature of one. It is really a permission or license, express or implied, to use the property of another in a particular manner, or for a particular purpose. Where this

permission has led the party to whom it has been given, to treat his own property in a way in which he would not otherwise have treated it ... it cannot be recalled to his detriment. Thus, the irrevocable license gives absolute rights, and protects the licensee in the enjoyment of those rights. Moreover, successors-in-title take subject to an irrevocable license if they had notice of the license before the purchase.

*Id.* (emphasis added).

Instantly, the court based its findings on Dean Lehman's detrimental reliance in relocating the access road. Dean Lehman spent $2,047.50 and more than 24 hours of his time and labor. The court concluded "the Lehman family had a claim to prescriptive easement over the access road crossing near the Winter property, which they surrendered in electing to relocate the access road [onto the Lehman Farm]." Amended Trial Court Opinion, 2/4/21, at 3.

As noted, Mae Lehman deeded the Busler Tract to her five sons in 1995. Dean Lehman testified that a portion of the property "wasn't really accessible for a vehicle," and the Four Lehman Brothers regularly used Busler Lane, owned by the Winter family, to access the property. N.T., 9/9/20, at 16, 23. He also testified that after his mother deeded the Busler Tract to him and his brothers, the Winters asked that they relocate the existing access road. Dean Lehman was asked on direct-examination:

[Q:] Now, let's go back a little bit more to when it got the portion through the Winter's property, which was never in your family but was used regularly, got changed. Who initiated this, who asked you if you might change that?

[Dean Lehman:] Mr. Winter asked me if we could change that because if he was having a picnic or some kind of get together, he

- 10 -

did not like us to go past his house and garage on that road … He even had a survey made of 25 feet wide drawn up on a map, a surveyor's map[.]

*Id.* at 25.

With regard to expenditures and detrimental reliance, Dean Lehman testified at length about the effort to relocate the easement to the access road on Lehman Farm.  He stated:

This is what I spent, roughly, and the hours. I didn't keep track of it 100 percent but I put 16 hours at $45.00 an hour with a 955 shovel front and I charged myself and the brothers $600.00 but I didn't get any money from anybody but I just put the money into it and I got $15.00 an hour for the truck, trucking -- the gravel and all 50 loads and I paid 15 -- charged myself $15.00 an hour for the trucking.  And I had 12.5 hours of loader in the gravel pit that was $510.00.  And I had five loads of 2A stone delivered and that was $1,147.50 and fee [*sic*] P.Stone charged me $200.00 to deliver it.  And I had rented a dozer with a blade on from a friend of mine and he charged me $700.00 for the use of it.  So the total at that time was $3,912.50 which today would be alot [sic] more if I was putting it in.

*Id.* at 26.

He responded to further questioning on direct examination as follows:

[Q:] So now the area where it crossed the Winter property previously, all right, used regularly and without asking permission, was that then changed by the Winters?  Was that, what had been a lane, was that then landscaped, reseeded, that kind of thing?

[Dean Lehman:] They had -- after we put the road in they reworked their lawn and made it so they could mow it because the road no longer went past their place and they did a very nice job on their lawn from what I can see.

[Q:] - So might it be obvious but any use of that property, the Winter property, without permission other than the small area where it crosses them on the new location, that's been interrupted, that hasn't happened since 1996?

- 11 -

[Dean Lehman:] That hasn't happened.

*Id.* at 27.

Upon review, we disagree with Appellants' claim that "none of the actions of the [Four Lehman Brothers] constituted changes that would prevent [their] land from being restored to its original position," and likewise, agree with the Four Lehman Brothers that their former "right-of-way" on the Winters' property was given up "in reliance on the implied and reasonable inference that the replacement [access on the Lehman Farm] would have the same use rights as the former section [on the Winters' property], and clearly no property owner would knowingly give up the only practical access to his tract." Appellants' Brief at 12; Four Lehman Brothers' Brief at 6. The record provides ample support for the trial court's determination that the Four Lehman Brothers "established detrimental reliance in relocating the road based on [Dean Lehman's] estimation of his out-of-pocket expenditures," and "evidence that the Lehman family had a claim to prescriptive easement over the access road crossing near the Winter property, which they surrendered in electing to relocate the access road." Amended Trial Court Opinion, 2/4/21, at 3.

Next, we find Appellants' third and fourth issues with respect to the location and size of the easement – which they address together – undeveloped and unsupported by legal authority. Appellants cite the general proposition that the location of an easement "must be certain, continuous, and apparent, palpable, and manifest, and obviously permanent in its nature,"

- 12 -

and then claim, without further explanation, that the trial court's verdict "falls well short of the requirements of a 'certain' location of the roadway at issue." Appellants' Brief at 13-14.

> The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that [m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

*Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (citations omitted).

Appellants' argument contains no legal analysis and cites no legal authority to support their assertions. Also, Appellants did not raise this issue in their post-trial motion, in which they challenged the court's finding of an easement; calculation of expenditures; determination of detrimental reliance; and typographical errors in the court's opinion, verdict and order. *See* Post-trial motions, 10/6/20, at ¶¶1-5. It is well-settled that failure to raise an issue in a post-trial motion constitutes waiver of the issue on appeal. *See Keffer*

*v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 650 (Pa. Super. 2012).

Thus, Appellants' third and fourth issues are unavailing.[2]

In their fifth and sixth issues, Appellants challenge the trial court's decision to grant the Four Lehman Brothers' claim of assumpsit and award attorney's fees of $10,513.00. In their complaint, the Four Lehman Brothers cited the indemnity clause in the five brothers' December 30, 1994 real estate agreement as their basis for relief. The Agreement, which the five brothers entered into in anticipation of purchasing the Busler Tract from their mother, provided:

> 2. Indemnity. Each party shall indemnify and hold harmless the other parties against all debts, liens, judgments or charges of any nature whatsoever accruing against the Premises by reason of any act or failure to act of the indemnifying party.

Complaint, 10/23/18, at Ex. C.

Appellants assert "the Real Estate Ownership Agreement makes absolutely no reference or mention to the easement at issue herein." Appellants' Brief at 14-15. They contend the indemnification clause "makes absolutely no mention of attorney's fees, and the attorney's fees incurred by [the Four Lehman Brothers] in the prosecution of this matter in the lower courts was done of their own volition[.]" *Id.* at 15.

_____

[2] Absent waiver, the issues would lack merit because the record is replete with evidence – including, but not limited to, surveys, maps, and deeds – identifying and documenting the proportions of the judicially-determined easement.

As a general rule, an indemnitee is entitled to recover, as part of his or her damages, reasonable attorneys' fees. The allowance of attorneys' fees is limited, however, to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity. 41 Am.Jur.2d, Indemnity § 36 (1968); 42 C.J.S., Indemnity, § 13d (1944). These authorities were cited with approval by our Supreme Court in **Boiler Engineering and Supply Company, Inc. v. General Controls, Inc.**, 277 A.2d 812 (Pa. 1971), where an indemnitee was permitted to recover counsel fees and costs incurred in defense litigation and paid by its insurer under the terms of the policy from the indemnitor. The Court held "that only those expenses engendered by the defense litigation and not that portion allocable to the indemnification litigation may be recovered by the indemnitee. Convinced by the logic of these jurisdictions, we adopt this latter principle." **Id.** at 814 (citation omitted). The rationale for the rule was artfully stated by the Second Circuit Court of Appeals as follows:

> Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and thus fall squarely within the obligation to indemnify. Consequently, attorney's fees incurred in defending against liability claims are included as part of an indemnity obligation implied by law . . . and reimbursement of such fees is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise . . . . As stated by the Fifth Circuit, "[t]his rule simply gives effect to the very nature of indemnity, which is to make the party whole." **Such reasoning does not apply to fees and expenses incurred in establishing the existence of an obligation to indemnify, since such expenses are not by**

- 15 -

**their nature a part of the claim indemnified against**. Rather, they are costs incurred in suing for a breach of contract, to wit, the failure to indemnify. As such, fees and expenses incurred in establishing the indemnity obligation fall within the ordinary rule requiring a party to bear his own expenses of litigation[.]

*Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir. 1985). (citations omitted) (emphasis added). Thus, for an indemnity clause to include recovery of attorneys' fees incurred to enforce an indemnity obligation, the indemnity provision must **expressly** provide for recovery of those expenses — otherwise the fees must be borne by the indemnitee suing to enforce the indemnity obligation.

Mindful of the foregoing, we conclude that the language of the Agreement is insufficient to shift the obligation for attorneys' fees incurred by the Four Lehman Brothers in this easement action. The Agreement did not mention attorneys' fees at all. *See* 41 Am.Jur.2d Indemnity § 30 ("If the indemnification clause at issue does not specifically say that it includes attorneys' fees, they are excluded."); *Peter Fabrics*, *supra* ("[T]he rule that an indemnitee cannot recover the costs of establishing the right to indemnification does not apply if the agreement explicitly says otherwise."). As the Four Lehman Brothers cannot recover attorneys' fees, we are constrained to reverse and vacate the part of the trial court's order awarding attorneys' fees and costs.

Finally, in their seventh issue, Appellants assert the trial court lacked jurisdiction to enter its March 5, 2021 order, which supplemented the verdict

to include an award of attorney's fees. Appellants cite Pa.R.A.P. 1701(a), which states:

> **(a)** **General rule.--**Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

Pa.R.A.P. 1701(a). Because Appellants filed their notice of appeal on February 24, 2021, they maintain the trial court lacked jurisdiction to issue the March 5, 2021 order. We disagree.

Although Appellants filed their notice of appeal on February 24, 2021, judgment had not been entered. *See McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 645 (Pa. Super. 2013) (trial court's disposition of post-trial motions did not constitute an appealable order). Further, the trial court conveyed the interim nature of its February 4, 2021 order when it stated that it would "amend this Verdict to include the amount of legal fees and costs to be paid following the fourteen day period for submission of an itemization and objections." Amended Trial Court Opinion, 2/4/21, at 7. Therefore, the trial court's amended verdict entered on February 4, 2021 was not a final, appealable order, and the trial court retained jurisdiction to enter the March 5, 2021 order. *See also Commonwealth v. Klein*, 781 A.2d 1133 (Pa. Super. 2001) (Rule 1701 must be read in conjunction with a court's inherent power to amend its records, to correct mistakes of the clerk or other officer of the court, inadvertences of counsel, or supply defects or omissions in the record).

Judgment affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/08/2021